(97 South. 337)

No. 25969.

COCO, Atty. Gen., v. JONES.

(May 28, 1923.   Rehearing Denied July 11, 1923.)

*(Syllabus by Editorial Staff.)*

1. Judges ⬡11—District judge not removable for crime or misdemeanor unless committed in connection with office.

In view of Const. 1879, art. 196, Const. 1898, art. 217, and Const. 1913, art. 217, providing for impeachment or removal of judges and other officers for high crimes and misdemeanors, "for nonfeasance or malfeasance" in office, etc., Const. 1921, art. 9, § 1, which omits the quoted words and reads "for high crimes and misdemeanors in office," does not authorize removal for high crimes and misdemean-

ors' unless committed in connection with official acts, especially in view of article 8, § 6, and Rev. Civ. Code, art. 13.

**2. Officers ⚖══66—One only "convicted" so as to be disqualified when convicted according to constitutional guaranties.**

Const. 1921, art. 8, § 6, providing that person convicted of crime punishable by imprisonment in the penitentiary is deprived of right to hold office, refers to conviction in criminal prosecution conducted according to forms and with privileges guaranteed by Bill of Rights and other pertinent provisions of the Constitution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Convicted—Conviction.]

**3. Judges ⚖══11—Not removable for carrying pistol and abusing and slandering and assaulting citizen with intent to kill; "gross misconduct."**

District judge carrying concealed pistol on the street and unlawfully abusing and slandering a citizen and assaulting him with intent to kill is not removable from office under Const. 1921, art. 9, §§ 1, 5, providing for removal for "gross misconduct," in view of further provision for removal for high crimes and misdemeanors "in office."

**4. Judges ⚖══10—Institution of suit held acknowledgment of judge's right to withdraw resignation.**

Institution of suit to remove district judge from office after he had withdrawn resignation, and even after the date when his resignation would otherwise have taken effect, was acknowledgment that he had right to withdraw it before it took effect.

**5. Evidence ⚖══48—Judicial cognizance taken of Attorney General's advice to chief executive as to judge's right to withdraw resignation.**

The court may take judicial cognizance of the fact, which is matter of public knowledge and record, that Attorney General has officially advised chief executive that district judge exercised legal right in withdrawing resignation before date it was to become effective.

**6. Judges ⚖══16(1)—Charge of assault with intent to kill justifies assignment of different judge to perform duties.**

That charge of assault with intent to murder is pending against district judge justifies Supreme Court in exercising authority under Const. art. 7, § 12, to assign another judge to impanel grand jury, hold court, and perform all duties and functions of judge of the court until prosecution is finally disposed of.

**7. Judges ⚖══11—Not entitled to judgment for attorney's fees in suit for removal.**

Though Const. 1921, art. 9, § 7, par. 3, provides that officer successful in suit for removal shall recover costs and reasonable attorney's fee, there being no authority for condemning particular individual or state to pay attorney's fee to district judge sought to be removed, judgment therefor will be denied.

**8. Judges ⚖══11—Sustaining of exception to petition in suit to remove because of commission of crimes does not prevent appropriate action after termination of prosecution.**

Judgment maintaining exception to petition, in suit to remove district judge because of commission of crimes not connected with official duties, will not affect Attorney General's right to institute any proceeding deemed appropriate after prosecution for such alleged crimes has been finally disposed of.

Rogers, J., dissenting.

Original suit by A. V. Coco, Attorney General, against James W. Jones, Jr. On exception of no cause of action. Exception sustained, and cause dismissed.

A. V. Coco, Atty. Gen., and George Seth Guion and Paul A. Sompayrac, Asst. Attys. Gen. (M. H. Carver and Phanor Breazeale, both of Natchitoches, H. W. Bethard, Jr., of Coushatta, and D. J. Hyams, of Natchitoches, of counsel), for the State.

Thomas W. Robertson, of Shreveport (C. S. Hebert, of New Orleans, and C. M. Cunningham, of Natchitoches, of counsel), for defendant.

O'NIELL, C. J. This is a suit to remove from office the judge of a district court. It belongs to one of the few classes of cases of which the Supreme Court has original jurisdiction. The proceeding is founded upon the provisions of sections 1 and 5 of article 9 of the Constitution. Section 1 specifies the causes for which any state or district officer shall be liable to impeachment, and

section 5 declares that the judges of the courts of record may be removed from office by a judgment of the Supreme Court, for any of the causes specified in section 1.

The Attorney General charges, as the cause for demanding the defendant's removal from office:

"That on the 10th day of March, 1923, a suit was filed in the magistrate's court of ward 1 of said parish of Natchitoches by one Paul A. Ducournau, against the said James W. Jones, Jr., for the collection of a debt due by the said James W. Jones, Jr., for rent of premises leased by the said James W. Jones, Jr., from the said Paul A. Ducournau; the said Paul A. Ducournau acting as the agent of the lessors of said leased premises.

"That, after the filing of said suit, to wit, on the 12th day of March, 1923, the said James W. Jones, Jr., upon meeting the said Paul A. Ducournau upon the public streets of Natchitoches, La., in the said parish of Natchitoches, unlawfully did abuse and slander, assault and strike the said Ducournau. That one E. S. Prudhomme, of said parish of Natchitoches, was present at the time, and intervened and prevented the said James W. Jones, Jr., from doing further bodily harm to the said Ducournau. That, immediately thereafter, the said James W. Jones, Jr., became the aggressor, and without any provocation did draw from his pocket a pistol, which he had concealed therein, and did shoot the said Ducournau, with the felonious intent to kill and murder him, and did severely wound the said Ducournau.

"That on the 14th day of March, 1923, the lawyers of the bar of Natchitoches and Red River parishes, except one S. R. Thomas, who was absent from said parish at that time, held a meeting at Campti, in said parish of Natchitoches, for the purpose of discussing the aforesaid unlawful, unwarranted and illegal acts of the said James W. Jones, Jr., and to take action touching the fitness of the said James W. Jones, Jr., to continue to occupy the office of judge of the Eleventh judicial district.

"That said meeting was adjourned from Campti to the courthouse of Natchitoches Parish, on the same day, and on said date the said James W. Jones, Jr., was present and requested that he be heard. His request was granted, and he thereupon tendered for transmission to the Governor of the State of Louisiana, his resignation as judge of the Eleventh judicial district of Louisiana, the same to take effect on April 30, 1923. That, at said meeting, not only did the said James W. Jones, Jr., tender his resignation as aforesaid, but he pledged his word of honor that he would not again hold court in the Eleventh judicial district before his resignation became effective, and he further stated that his reason for deferring his resignation until April 30, 1923, was because of the fact that he had already borrowed money on the faith of his salary as judge for the months of March and April, 1923, and that without the salary for said months, he could not meet his obligations.

"That said resignation was immediately accepted by said attorneys, and was transmitted to the Governor of the State of Louisiana, and was by said Governor duly accepted on March 16, 1923.

"That, without any explanation whatever to the lawyers constituting the bar of said Eleventh judicial district, the said James W. Jones, Jr., has withdrawn his resignation, thus violating his agreement made with said lawyers, and upon which, in good faith, the lawyers of said district accepted said resignation.

"That the said James W. Jones, Jr., not only withdrew his resignation as aforesaid, but he has violated his pledge and word of honor, which he gave to the lawyers of said district, in that he has held two sessions of the district court of the parish of Natchitoches on April 25 and April 28, 1923, at which sessions of said court business was transacted, but that no lawyers attended said sessions except three members of the bar, namely, C. M. Cunningham, J. C. Gunther and E. S. Prudhomme.

"That the said James W. Jones, Jr., was duly arrested on March 12, 1923, upon affidavit made by the sheriff of the parish of Natchitoches charging the said James W. Jones, Jr., with having feloniously shot the said Ducournau with intent to kill and murder, and the said Jones did thereupon furnish bond in the sum of $2,000, conditioned upon his appearance at the next regular term of criminal court to be holden in said parish.

"Considering the allegations of facts hereinbefore made, petitioner avers that the said James W. Jones, Jr., a peace officer and judge of the Eleventh judicial district, is an unfit person to occupy the office of judge of the said district, in that he has been guilty of gross misconduct, and in the following particulars, to wit:

"(a) That the said James W. Jones, Jr., has carried a pistol concealed on and about his person upon the public streets of Natchitoches.

"(b) That he did unlawfully abuse, slander, assault and strike a citizen of this state.

"(c) That he did unlawfully and feloniously shoot and wound a citizen of this state with intent then and there to kill and murder said citizen.

"(d) That he is without sense of honor or integrity."

The defendant has filed a plea of prematurity and an exception of no cause of action. The plea of prematurity is founded upon the fact that defendant has not been convicted, or even indicted, for the alleged crime, for which the Attorney General is demanding his removal from office. The exception of no cause of action is founded upon the argument that the Attorney General's petition does not accuse defendant of having committed a crime or misdemeanor "in office," or of having been guilty of gross misconduct in office. The argument is that the alleged crime, shooting with intent to commit murder, is not a "high crime in office," and that the alleged misdemeanors, carrying a concealed weapon, abuse and slander, and assault and battery, are not "misdemeanors in office."

[1] According to article 217 of the Constitution of 1898, and the corresponding article of the Constitution of 1913, and according to article 196 of the Constitution of 1879, the "high crimes and misdemeanors" for which a district judge might have been impeached or removed from office were not restricted, as they are in section 1 of article 9 of the Constitution of 1921, to "high crimes and misdemeanors in office." In the Constitution of 1879, and in that of 1898 and of 1913, the causes for impeachment or removal from office were enumerated thus:

"For high crimes and misdemeanors, for nonfeasance or malfeasance in office, for incompetency, for corruption, favoritism, extortion or oppression in office, or for gross misconduct or habitual drunkenness."

The only material change made in transcribing the language of article 217 of the Constitution of 1913 into section 1 of article 9 of the Constitution of 1921 was the omission of the words "for nonfeasance or malfeasance," viz.:

"For high crimes and misdemeanors in office, incompetency, corruption, favoritism, extortion, or oppression in office, or for gross misconduct, or habitual drunkenness."

The effect of the change was to do away with high crimes and misdemeanors, as a cause for impeachment or removal from office, excepting such high crimes and misdemeanors as constitute also nonfeasance or malfeasance in office. Under the Constitution of 1913, "for high crimes and misdemeanors" was one separate and distinct cause for impeachment or removal from office, and "for nonfeasance or malfeasance in office" was another separate and distinct cause. It cannot be supposed that the purpose in omitting the words "for nonfeasance or malfeasance" was to abolish nonfeasance and malfeasance, as causes for impeachment or removal from office. The idea which was intended to be expressed—and which was expressed—was that only high crimes and misdemeanors committed in connection with official acts should be causes for impeachment or removal from office; and, inasmuch as high crimes and misdemeanors in office are, essentially, also nonfeasance or malfeasance in office, the expression "for nonfeasance or malfeasance" was deemed a pleonasm. And so it was, according to the interpretation that had been given to the language of the Constitution of 1879, 1898, and of 1913, by the decisions of the Supreme Court.

The original jurisdiction of the Supreme Court to oust a judicial officer from his office was first conferred by article 200 of the Constitution of 1879, which article was the pattern for article 221 of the Constitution of 1898, copied literally in the Constitution of 1913, and changed slightly as transcribed in section 5 of article 9 of the Constitution of 1921.

Article 200 of the Constitution of 1879 gave the Supreme Court original jurisdiction of suits to remove from office judges of the courts of appeal, of the district courts, and of the city courts for the parish of Orleans, "for any of the causes specified in article 196." The latter article specified the causes for impeachment, in language which, as we have shown, was copied literally in article 217 of the Constitution of 1898 and of 1913.

The first case in which the Supreme Court gave an interpretation of articles 196 and 200 of the Constitution of 1879 was that of State ex. rel. Attorney General v. Cheevers, 32 La. Ann. 941 (see, also, State ex. rel. Cheevers v. Duffel, 32 La. Ann. 649), decided in October, 1880. The object of the suit was to prevent the defendant from discharging the functions of the office of judge of a district court, to which he had been elected. It was alleged that he was not eligible for the office; and, in support of the allegation, "grave charges were preferred against him" in the petition of the Attorney General. The ruling was that the question of eligibility of a judicial officer was not within the original jurisdiction of this court, as conferred by article 200, for the removal of judicial officers for the causes specified in article 196, of the Constitution of 1879. In the course of the opinion delivered by Chief Justice Bermudez, it was said:

"After a most attentive examination and thorough scrutiny of the articles of the Constitution bearing upon the questions before us, we unhesitatingly declare that, as our original jurisdiction over cases for the removal of judicial officers attaches only where they are charged with *official* crime, *official* misconduct, or *habitual* vice, or personal or official disability or incompetency, we are utterly devoid of such jurisdiction over, and cannot determine primarily suits brought against, parties claiming to have been elected to a judicial office, when such suits, *whether instituted before or after induction into office,* are based upon causes incorporated in article 171 of the Constitution, and charge the ineligibility of such parties," etc. (The italics are ours.)

It may be said that the court's expression, "our original jurisdiction over cases for the removal of judicial officers attaches only where they are charged with official crimes, official misconduct, or habitual vice," etc., was not a part of the ruling of the court, and was therefore mere obiter dictum. It is true, the expression was not quite a decision or ruling that "for high crimes and misdemeanors, for nonfeasance or malfeasance in office, * * * or for gross misconduct," meant only "for official crimes, official misconduct, or habitual vice." But the expression has been affirmed several times in the decisions of this court; and the language of the Constitution of 1879, of 1898 and of 1913, was changed in the adoption of the Constitution of 1921, to conform exactly with the decisions.

In State ex rel. District Attorney v. Sheriff, 45 La. Ann. 1350, 14 South. 28, it was held that article 201 of the Constitution of 1879, declaring that all parish, municipal and ward officers were subject to removal from office "for any of the causes enumerated in article 196," did not warrant the institution of a suit to remove a sheriff for having been "guilty of perjury, misfeasance and gross misconduct in office," in that he had testified, as a witness in a lawsuit, that the facts stated in his return on a writ of fieri facias were true and correct. With regard to that specification (being the fourth specification) in the district attorney's petition, the court said:

"The fourth specification cannot be sustained, as the act charged was not done in any official capacity. He was sworn as a witness in the case, and his oath was not an official act. The facts sworn to were shown by his return, which, in another specification is alleged to be false and fraudulent. State v. Kellam, 4 La. 495."

In the case cited, State v. Kellam, 4 La. 495, it was held that a charge that the clerk of court had participated "in an affray

which ended in the death of a citizen, and for which the grand jury only found a bill for manslaughter against the principal," did not sustain an action to remove the clerk of court from office, because the accusation did not pertain to his official conduct.

In State ex rel. Moore, District Attorney, v. Reid, Sheriff, 129 La. 158, 55 South. 748, Ann. Cas. 1912D, 1081, which was a suit to remove the sheriff for gross misconduct on the part of one of his deputies, the action being brought under the provisions of article 222 of the Constitution of 1898, declaring such officers subject to removal for any of the causes specified in article 217, it was said:

"Some of the acts were committed by said deputy in his private, not his official, capacity, for which his principal is not responsible."

The manifest purpose of the change made in the transcript of article 217 of the Constitution of 1913, as section 1 of article 9 of the new Constitution, was to make the enumeration or specification of the causes for impeachment or removal from office conform with the jurisprudence on the subject. Whatever the purpose, the effect of the change cannot be mistaken. And the Code admonishes us that, when a law is free from ambiguity, we must not depart from its letter to pursue its spirit. Rev. Civ. Code, art. 13.

[2] There is reason why it was not deemed necessary, by the writers of the new Constitution, to make any or all crimes and misdemeanors causes for impeachment or removal from office. Section 6 of article 8 of the Constitution declares that any person "convicted of any crime which may be punishable by imprisonment in the penitentiary" is thereby deprived of the right to hold office. The word "convicted" means, of course, convicted in a criminal prosecution conducted according to the forms and with the privileges guaranteed in the Bill of Rights and in the other pertinent provisions of the Constitution. It would seem inconsistent, therefore, to say that the mere accusation, before conviction, of a person charged with "any crime which may be punishable by imprisonment in the penitentiary," should be cause for depriving the accused person of a public office.

With regard to "misdemeanors in office," it was perhaps deemed unwise, in the light of the modern tendency to legislate against all kinds of indiscretions, to make any or every misdemeanor on the part of a public official— even a misdemeanor having nothing to do with his official duties or his moral character—a cause for impeaching him or removing him from office.

[3] Whatever may be meant by the term "gross misconduct," as a cause for impeachment or removal from office, it is quite certain that it does not mean or embrace all high crimes and misdemeanors. If the writers of the Constitution had intended that the cause "for gross misconduct" should embrace all high crimes and misdemeanors, they would not have specified, as another cause for impeachment or removal from office, "for high crimes and misdemeanors in office." The opinion expressed by this court in State ex rel. Attorney General v. Cheevers, 32 La. Ann. 941, was that "gross misconduct" meant "official misconduct, or habitual vice." It is not necessary to decide now whether one isolated instance of misconduct on the part of a public officer might be so gross as to be a sufficient cause for his impeachment or removal from office, even though it might not be deemed official misconduct, or evidence of a habitual vice. It is sufficient to say that it would be altogether inconsistent to hold that the crime charged in this case, being not a high crime or misdemeanor in office, for which the defendant could be impeached or removed from office, is none the less a sufficient cause for his removal, "for gross misconduct."

[4, 5] The final allegations in the Attorney General's petition, that the defendant "is

without sense of honor or integrity," has reference to his having withdrawn his resignation from office, in violation of his promise to the attorneys practicing in his court. This proceeding to remove the defendant from office, having been instituted after he had withdrawn his resignation, and even after the date when the resignation would otherwise have taken effect, is an acknowledgment that the defendant had the right to withdraw his resignation before the date when it would otherwise have taken effect. We may also take judicial cognizance of the fact, which is a matter of public knowledge and record, that the Attorney General has officially advised the chief executive that the defendant exercised a legal right in withdrawing his resignation before the date when it would otherwise have gone into effect.

The defendant in this case filed a plea to the jurisdiction of the court, which plea challenges only the authority to suspend him until this suit is finally decided. Having concluded that the suit must be dismissed for want of a cause of action, we find it unnecessary to consider the plea to the jurisdiction of the court to order a temporary suspension from office.

The plea of prematurity, in this case, is not quite appropriate. Its meaning is that the proceeding is premature because there has not been a conviction of the crime charged. We doubt that a suit like this, brought originally in this court, would be appropriate, or necessary, after a conviction of the crime charged, for which the defendant might be punished by imprisonment in the penitentiary, and be thereby disfranchised.

[6] The facts alleged in the Attorney General's petition, even so far as they are admitted in the defendant's answer, disclose a sufficient cause for our assigning a judge of another district court to the defendant's district, to empanel the grand jury for the approaching term of court, and to hold the term of court, and to perform all of the duties and functions of judge of that court until the prosecution of the defendant for the crime charged shall have been finally disposed of. Our authority to make such an assignment is conferred, not by the provisions for impeachment or removal from office, in article 9, but by section 12 of article 7, of the Constitution. The matter may therefore be dealt with in a special order of the court.

[7] The defendant invokes the provision in the third paragraph of the seventh section of article 9 of the Constitution that, in a case like this, finally decided in favor of the defendant, he shall have judgment for all costs and for a reasonable fee for his attorney. The defendant, of course, has not paid or advanced any court costs. If the costs have not been paid by the Attorney General, it is because the suit has been regarded as an action by the state. We do not find any authority for condemning any particular individual, or the state, to pay the defendant's attorneys' fees. Therefore, until there is some legislation on the subject, we shall decline to give judgment for an attorney's fee in such case.

[8] Our judgment, maintaining the defendant's exception of no cause of action, shall not affect the right of the Attorney General to institute any proceeding that he may deem appropriate after the prosecution of the defendant for the crime charged against him shall have been finally disposed of.

The exception of no cause of action is sustained, and the suit is therefore dismissed.

ROGERS, J., dissents.
DAWKINS, J., concurs in the decree.