By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. Defendant was convicted of grand larceny, and his appeal presents but one bill of exception, to wit, to the overruling of his motion for a new trial.

[1] The first, second, and third grounds urged related to rulings on evidence during the course of the trial and to certain remarks made by the district attorney. As to all of these, however, no formal bill of exception was reserved at the time and hence they can not be considered by us. State v. Haines, 51 La. Ann. 731, 25 South. 372, 44 L. R. A. 837; State v. Poree, 136 La. 939, 68 South. 83.

[2] The fourth ground urged is that the bill of information went to the jury with a notation thereon showing that a previous trial had resulted in a mistrial. The bill of exception does not show that the information was placed in the hands of the jury. But, even if so, we cannot see how it could possibly injure the accused that the jury should know that another jury had not been convinced of his guilt, rather the reverse.

So that, even if it was error to allow this knowledge to reach the jury, yet defendant suffered no harm thereby. Had the former trial resulted in a conviction, afterwards set aside the case might be different.

But we think it well to observe that trial judges should, as far as possible, avoid placing before juries in a second trial any evidence showing what may have occurred on the former trial.

### Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.

(98 South. 252)

No. 26126.

### STATE ex rel. LIVAUDAIS, Dist. Atty., v. GOWLAND.

### In re GOWLAND.

(Nov. 5, 1923. Rehearing Denied by Division B, Dec. 10, 1923.)

*(Syllabus by Editorial Staff.)*

**Justices of the peace ⬡10—Evidence held to disclose gross misconduct justifying removal of justice from office.**

In a proceeding to remove a justice of the peace from office, evidence that defendant and a deputy sheriff arrested two truck drivers on suspicion of transporting intoxicating liquor contrary to law, confined them in jail, and later released them on the alleged claim that no intoxicating liquors were found in the trucks, when as a fact defendant and the deputy sheriff had confiscated the liquor for their own purposes, *held* to disclose gross misconduct justifying removal of defendant from office.

Certiorari to Court of Appeal, Parish of Orleans.

Proceedings by the State, on the relation of Philip R. Livaudais, District Attorney, against Samuel D. Gowland to remove the latter from office as Justice of the Peace. Judgment for defendant was reversed by the Court of Appeal, and he applies for certiorari or writ of review. Affirmed.

N. H. Nunez and Fred Ahrens, both of St. Bernard (Theo. Roehl, J. M. Quintero, and Woodville & Woodville, all of New Orleans, of counsel), for relator.

Philip R. Livaudais, Dist. Atty., and James Wilkinson, both of New Orleans, for respondent.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. The district attorney for the Twenty-Ninth judicial district, under authority conferred on him by section 6, art. 9,

of the Constitution of 1921, instituted this proceeding against the defendant, Samuel D. Gowland, to remove him from the office of justice of the peace of the First ward of the parish of St. Bernard.

The cause for removal, as alleged in the petition, is that the said Gowland, as justice of the peace, has been guilty of gross misconduct, nonfeasance, favoritism, and oppression in office; and these charges are amplified and supported by six separate and distinct specifications.

As the main reliance of the district attorney seems to be placed on the specification in pargraph 4 of the petition, we shall quote that paragraph in full:

"(4) That on the morning of August 16, 1921, between the hours of 3 and 4 o'clock, the said Samuel D. Gowland, in company with one Walter Wittschen, then a deputy sheriff of the parish of St. Bernard, without jurisdiction and without legal right or warrant, under color of his official authority as justice of the peace of the First ward of St. Bernard parish, pursued into the city of New Orleans, and at the corner of St. Claude avenue and Tricou street, overtook and intercepted two certain trucks loaded with alcoholic liquor, taking possession of said trucks and conveying them to the place of residence of said Walter Wittschen in the First ward of the parish of St. Bernard, and placing under arrest four men in charge of said trucks and conveying them to the First ward jail and incarcerated them without affidavit, warrant, or commitment; that shortly thereafter, the said Samuel D. Gowland removed from said jail two of said prisoners, and after conference between said prisoners, the said Gowland and the said Wittschen, on the outside of said jail, the said Gowland instructed one John Page, who held the keys to said jail, to release all of said prisoners.

"That the said Gowland made no record of said illegal arrest and imprisonment or of said release, as was his duty under the law as such justice of the peace, but on the contrary, instructed the said John Page, keeper of said jail, to make no report or mention of said illegal arrest and imprisonment. That all of the aforesaid acts were prompted by wrongful and corrupt motives."

The defendant for answer denied that he had been guilty of gross misconduct, non-feasance, favoritism, and oppression at any time in the discharge of the duties of his office. He admits that in response to a request from Deputy Sheriff Wittschen he did join that law officer in pursuit of two trucks supposed to be carrying alcoholic liquors in violation of the law; that the men in charge of said trucks were overtaken and arrested by the deputy sheriff and placed in jail in the First ward of St. Bernard parish; but he alleges that when on investigation it was found that said trucks were not loaded with alcoholic liquors, said drivers were immediately released and discharged by him, and their trucks turned over to them.

The trial in the district court resulted in a judgment rejecting the demand for removal, but on appeal to the court of appeal for the parish of Orleans the judgment was reversed, and a judgment removing the defendant from office was rendered. The last-named judgment is now before us for review.

The court of appeal found as a matter of fact that the two trucks were loaded with alcoholic liquor, and that the defendant was a party to and equally responsible with the deputy sheriff for the arrest and imprisonment of the two drivers of the trucks and their two helpers, and also for the confiscation of the liquor. As a matter of law the said court found that the Volstead Act (41 Stat. 305) did not make it the duty of state officers to enforce its provisions, and there being no law of this state (this was prior to the passage of the Hood Bill) making it unlawful to have in one's possession or to transport intoxicating liquors within the state, the arrest and imprisonment of the parties named, and the confiscation of the liquors, constituted a misdemeanor in office sufficient to justify a judgment of removal.

As our conclusion shall be predicated on matters incidental to and growing out of the arrest of the truck drivers, rather than the legal authority of the defendant to make the

arrest, we do not find it necessary to pass on the question as to whether it is the duty of state officers to make arrests for the violation of the Volstead Act, nor as to whether such officers are authorized under said Volstead Act to arrest supposed offenders on mere suspicion, or on suspicious appearances, without an affidavit or warrant. Since the state, by "appropriate legislation," has provided for the enforcement of the Eighteenth Amendment to the federal Constitution, the precise question referred to is not likely to be presented again.

The facts leading up to the arrest of the truck drivers may be briefly stated as follows: On August 15, 1921, a strange schooner with a mysterious cargo came out of a lake and entered a bayou which traverses the swamp of St. Bernard parish adjoining the parish of Orleans and city of New Orleans. Somewhere on said bayou in said parish of St. Bernard the said schooner landed and unloaded on the banks of said bayou some 60 or 70 cases or boxes, the contents of which were concealed from view. Shortly thereafter the cases were loaded onto two motor trucks, one driven by Dominick Greco and the other by one John Konneker. Each of these drivers had a helper. The trucks were engaged to make the trip at $20 per load each. They moved to and from the out of way landing on the bayou under the cover of night. The two drivers placed on the stand as witnesses professed not to know who employed them and claimed entire ignorance of the contents of the cases they were transporting.

When the trucks came out of St. Bernard parish and had gotten across the parish line into the city of New Orleans, at about 3 o'clock in the morning the drivers were halted by two men who came up behind the trucks in an automobile. One of these men was the defendant and the other a deputy sheriff of St. Bernard. What happened then may be stated in the language of the defendant:

"There was a truck that passed, and Deputy Sheriff Wittschen said, 'That looks funny.' He said, 'Let's look it up; there might be some bootlegging or booze-running down here.' And I turned my car around and drove on in behind this truck as quick as it was possible to get it. In the meantime he passed out of St. Bernard, just over the line into New Orleans. I drove up alongside of the truck, and Mr. Wittschen commanded the driver of the truck to stop, and he stopped, and he told him he was under arrest; that he suspected him of transferring or transporting liquor, or whatever it was, and he placed him under arrest. In the meantime another truck drew up on the opposite side of the street, and he ran over and stopped that truck, leaving me with the man in the first truck, and he brought them all together and asked me to drive them over to the jail; that he had every reason in the world to believe that they were violating the law, and I did so, and he stayed there with the trucks, and in fact the trucks moved in my absence. They were later examined, and there was nothing found that would lead me to believe that there was liquor, alcohol, or anything in violation of the law, and he was there himself, had broken open some of the boxes and found nothing, and he stated there were no grounds to hold the men on, and he said he would have to release them, and I agreed with him, they having done nothing; it was only unfortunate that they were placed in jail. They were immediately released and the trucks given back to them, and they drove on to town."

It is shown that when the prisoners were released from the jail the defendant told the jailer not to say anything about the arrest and imprisonment of the parties, and on the day following the arrest the defendant told Deputy Sheriff St. Germain that he did not know of any arrest made the night before, and that he did not put anybody in jail that night. It is further shown that when the trucks were returned to the drivers they were empty; that is to say, the cases or boxes had been removed from them and were not delivered back to the drivers. What disposition was made of the boxes and their contents by the deputy sheriff and the de-

fendant has been concealed from the court. An impartial and fair consideration of all the evidence and circumstances appearing in the case can lead to no other reasonable or logical conclusion than that the boxes or cases found on the trucks contained alcoholic liquor ·or something which could not be legally and openly transported, nor become the legitimate subject of commerce. The conclusion is also inescapable that the defendant was a party to the arrest and imprisonment of the two drivers of the trucks and their two helpers. He was not only actually present, but acted in concert with the deputy sheriff throughout the whole transaction, taking an active part in the arrest; and he himself conveyed the prisoners to and incarcerated them in the jail, leaving the deputy sheriff in charge of the trucks. Without the defendant's aid and assistance and the use of his car, it would have been impossible for the deputy sheriff to have taken charge of the two trucks, despoil them of their load, and convey the four prisoners to the jail in St. Bernard parish. In view of the testimony it is idle to argue that the defendant was not responsible for the arrest and imprisonment of the four parties.

It is immaterial from our view of the case whether the arrest and imprisonment was within or without the law. In either event the conduct of the deputy sheriff and that of the defendant was not consistent with an honest and bona fide purpose to enforce the prohibition statutes, but, on the contrary, amply justifies the assumption that their prime and ultimate motive was the confiscation of the supposed liquors for private use and gain, and this they accomplished under guise and color of their official positions. We say this for the reason that when the arrests were made there was no examination made of the boxes to ascertain the nature of their contents, but instead the parties were immediately rushed off to the jail by the defendant, while the deputy sheriff took charge of the trucks, removed them to his residence, and unloaded them. When a sufficient time for this purpose had elapsed, the report was made by the deputy sheriff to his coadjutor, the defendant, that the boxes contained no liquor; and on this report the justice of the peace ordered the prisoners released from custody, directed the jailer to say nothing of what had transpired, and turned the trucks over to the drivers empty, and permitted them to go their way.

The questions may well be asked: Why was an examination of the boxes not made in the presence of the four prisoners who were accused, before hastening them off to jail? If the boxes contained prohibited liquors, why were such liquors not turned over to proper authorities and due charges made out against the possessors? If the boxes contained syrup, as stated by the deputy sheriff, or something else not in violation of law, as stated by the defendant, why were the boxes not left on the trucks and returned to the drivers in the condition they were in when seized? These questions are not answered by the record. The demand against the defendant called for an answer—a satisfactory explanation. He and the deputy sheriff were the only parties who could answer.

An honest effort within the law on the part of officials to enforce the prohibition statutes, as well as all other laws, is to be commended under any and all circumstances, and however and whenever brought before the courts; but the courts will not lend aid nor give sanction to the acts of officials who under the color of office spoliate the property in the possession of another, even though the property be contraband of the law and the possessor a bootlegger. If there is any occupation more despicable than that of a bootlegger, it is that of a hijacker.

The case of Coco, Attorney General, v.

Jones, 154 La. 124, 97 South. 337, can have no possible application to the facts of this case. While Jones was charged with gross misconduct and with the commission of high crimes and misdemeanors, the misconduct consisted in the shooting with intent to murder, and with carrying concealed weapons. The court held that the crimes charged were not "high crimes and misdemeanors in office," within the meaning of the constitutional provision of 1921, and that the term "gross misconduct," as used, does not mean or embrace all high crimes and misdemeanors. In this case the defendant, as a cause for removal, is not charged with high crimes and misdemeanors, but with gross misconduct in office as well as with nonfeasance, favoritism, and oppression in office.

Our conclusion is that the charge of gross misconduct is fully established by the evidence within the meaning and purview of the Constitution, and that the defendant for that reason should be removed from office.

For the foregoing reasons, the judgment and decree of the court of appeal of the parish of Orleans, herein made the subject of review, is hereby affirmed, at the costs of the defendant.

Rehearing refused by Division B, composed of DAWKINS, LAND and LECHE, JJ.