[No. 4027.]

FROST v. THOMAS, GOVERNOR.

CONSTITUTIONAL LAW—INJUNCTION—RESTRAINING EXECUTIVE.

Where the governor recognizes an act as legal and is proceeding to execute its provisions, the courts cannot directly interfere with the discharge of his duties and restrain him from executing the law merely because it is alleged that the act is unconstitutional.

*Original Proceeding.*

Mr. J. C. HELM, Messrs. GUNNELL & HAMLIN, Messrs. COBURN, DUDLEY & LEWIS, and Messrs. WELLS & TAYLOR, for the relators.

Mr. B. F. MONTGOMERY, Mr. W. H. BRYANT, Mr. DAVID M. CAMPBELL, Attorney General, Mr. CALVIN E. REED and Mr. DAN B. CAREY, for respondent.

PER CURIAM. This is an original proceeding, instituted in this court by the plaintiffs, to restrain the defendant, in his capacity as governor of the state, from appointing officers for the recently created county of Teller, upon the ground that the act creating that county, and providing for the

appointment of its officers, is unconstitutional. The grounds upon which the plaintiffs rely, to establish the unconstitutionality of the act, as well as the injuries which will result to them and others similarly situated, if it is carried into effect, are fully set forth in the complaint. By the act in question, the governor is authorized and empowered to appoint certain officers for the new county, and it is charged, that unless restrained, he will do so. The only question to determine, is, whether or not an action of this character, on the facts stated, can be maintained against the chief executive of this commonwealth. The bill creating the county has been signed by the governor; it is his duty to see that all laws are faithfully executed, and in pursuance of the discharge of that duty, it devolves upon him to appoint the officers designated. In so doing he performs a duty of an executive character, exercises a function governmental in its nature, because he thereby equips one of the agencies of the state necessary for the purpose of carrying on its government, and carries into effect a law which the legislature, in the exercise of its powers, has seen fit to enact, and such being the character of his acts, which it is sought to restrain, he is clearly independent of the other coördinate departments of the government, and is not subject to their direct supervision or control. A few of the many reasons which exist why this rule obtains, will be briefly noticed. Our state government is divided into three coördinate branches—executive, legislative and judicial—each of which, by the constitution, has its powers limited and defined. They are of equal dignity, and within their respective spheres, equally independent. This apportionment of power is an inhibition of the authority of one to exercise that which belongs to either of the others; and it is essential to the preservation of the autonomy of the government, that there be no encroachment of one department upon another; and to this end, the just limitations of the constitutional powers accorded each must be jealously guarded. The legislature may pass an act in disregard of constitutional inhibitions, but the judicial department cannot directly interfere; the exec-

utive in the exercise of his constitutional prerogative, may veto it, or in failing to do so, the judiciary, in a proper case, may refuse to recognize it as controlling; but when the governor, in pursuance of his executive authority, recognizes an act as legal, and is proceeding to execute its provisions, the courts cannot directly interfere with the discharge of his duties under it, merely because it is alleged that such act is unconstitutional; otherwise, they would destroy those safeguards which are meant to be "checks of coöperation, and not of antagonism or mastery, and would concentrate in their own hands something, at least, of the power which the people, either directly or by the action of their representatives, decided to entrust to the other departments of the government." *Sutherland v. The Governor*, 29 Mich. 320.

True, neither department can operate in all respects independently of the other, because each, within its own proper sphere, may impose a restraint upon the remainder; but neither can assume, directly, a superior authority over another, as each, in the exercise of their respective powers, stand on a constitutional equality; and if the judicial department of the state should attempt, in a proceeding of this character, to compel the chief executive to refrain from the performance of his duties, under the act creating the new county, it would be an usurpation of authority which alone devolves upon the executive branch of the state government to exercise. *Sutherland v. The Governor, supra; State v. Lord*, 28 Oregon, 498; 43 Pac. 471; *Mississippi v. Johnson*, 4 Wall. 475.

The relief prayed is denied, and the action dismissed at the cost of plaintiffs.

*Action dismissed.*

CHIEF JUSTICE CAMPBELL dissenting.

Granting or refusing an application for a temporary writ of injunction rests in the sound discretion of the court. Were it not that the ground upon which the writ in the present case is refused seems to me to be inconsistent with the doc-

trine as laid down by this court in *Greenwood, etc., Land Co.
v. Routt,* 17 Colo. 156, I would not feel called upon to say
anything at this time. I can see no difference between the
character of the threatened act of the governor sought to be
enjoined in this action, and the nature of the act of the gov-
ernor which this court in a mandamus proceeding, the *Green-
wood* case, commanded him to perform. It might be that the
court in that case was in error in holding that the duty of
the governor to sign a patent for state land was merely min-
isterial, and that my associates are right in saying that the
threatened act of the governor in making appointments to
county officers is a political or governmental act. But neither
involves any discretion, and both, in my judgment, are the
same in kind.

It is also to be observed that Mr. Justice Elliott in his opin-
ion in the *Greenwood* case remarks that some of the state-
ments of Judge Cooley in the Michigan case, relied upon by
my brothers, do not meet with his approval. On an inter-
locutory hearing I do not think we should disregard a previ-
ous decision of this court, as it seems to me has been done in
the present instance, even though, on final hearing, it should
be reversed.

Whether or not this application might properly be denied
on other grounds is not considered by me ; and in view of the
fact that the merits of the controversy will probably in some
other form come before this court for decision, no opinion
concerning them is expressed. I desire now merely to ex-
press my inability to concur in the reason given for withhold-
ing the temporary writ.