In the Matter of the Application of GEORGE DONNELLY for an Alternative Order of Prohibition, Prohibiting His Excellency, FRANKLIN D. ROOSEVELT, Governor of the State of New York, from Entertaining Charges against, or Removal from Office, JAMES J. WALKER, Mayor of the City of New York.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES J. WALKER, Mayor of the City of New York, for an Order of Prohibition, against Hon. FRANKLIN D. ROOSEVELT, as the Trier of Facts, Acting in Pursuance of Section 122 of The Greater New York Charter of the City of New York, and Section 1 of Article 10 of the Constitution of the State of New York.*

Supreme Court, Albany County, August 29, 1932.

* See, also, 144 Misc. 687.

*Arnstein & Levine*, for George Donnelly.

*Curtin & Glynn* [*John J. Curtin, Adelbert P. Rich, Winfield S. Palmer* and *Wesley S. Sawyer* of counsel], for James J. Walker.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein* and *Claude T. Dawes* of counsel], for Franklin D. Roosevelt.

STALEY, J. The petitioners herein seek an order of prohibition against the respondent, Franklin D. Roosevelt, Governor of the State of New York, acting in his official capacity, prohibiting the

entertaining, proceeding with and making a determination thereon of charges filed against James J. Walker, as mayor of the city of New York, on the ground that the respondent, as Governor of the State of New York, has no jurisdiction of the subject matter, is without power to hear said charges or remove the mayor of the city of New York thereon, and in the conduct of said proceedings has exceeded his powers and jurisdiction as the trier of the facts.

The basis of the authority of the Governor to act in the matter is section 122 of the Greater New York Charter (chapter 466 of the Laws of 1901), which provides:

" The mayor may be removed from office by the governor in the same manner as sheriffs, except that the governor may direct the inquiry provided by law to be conducted by the attorney-general; and after the charges have been received by the governor, he may, pending the investigation, suspend the mayor for a period not exceeding thirty days."

Section 1 of article 10 of the Constitution provides that the Governor may remove a sheriff " within the term for which he shall have been elected; giving to such officer a copy of the charges against him, and an opportunity of being heard in his defense."

The petitioners challenge the constitutionality of the removal provision of the Greater New York Charter and assert that its authority for the removal of the mayor of the city of New York is in violation of section 3 of article 12, and of section 7, article 10, of the Constitution, and that the manner of conducting the proceeding by the Governor violates the constitutional rights of the relator James J. Walker.

Section 3 of article 12 of the Constitution, known as the City Home Rule section, provides in part that: " Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the State, relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, * * *. The Legislature shall, at its next session after this section shall become part of the constitution, provide by general law for carrying into effect the provisions of this section."

It is contended by the petitioners that this section of the Constitution, which was approved at the general election held in November, 1923, and became effective January 1, 1924, has nullified the force and validity of the removal section in the charter.

The Legislature, by chapter 363 of the Laws of 1924, enacted pursuant to constitutional direction, the City Home Rule Law. This law, by section 36, provides that all existing charters shall

continue in force until repealed, amended, modified or superseded in accordance with the provisions of the Home Rule Law and of the Constitution.

Section 15 of The City Home Rule Law (as amd. by Laws of 1925, chap. 397), expressly provides that any local law which " changes the method of removing an elective officer " shall be submitted for approval at a general election, and shall become operative only when approved at such election by the affirmative vote of a majority of the qualified electors of said city voting upon the proposition

Section 7 of article 12 of the Constitution, which is the concluding section of that article and which likewise became effective January 1, 1924, provides that: " The provisions of this article shall not affect any existing provisions of law; but all existing charters and other laws shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this article."

No local law has been passed and approved by the constituted city authorities of the city of New York and its electors to repeal, amend or modify the removal section of the charter, and it remains therein unaltered and as originally enacted.

The mere statement of these provisions of the Constitution and the statute, and the fact that no local law has been enacted affecting the method of removal of the mayor, is sufficient to establish the conclusion that the removal section of the charter, if otherwise valid, constitutes existing law. No argument is required to persuade a reasonable mind that the power to repeal or modify granted by the Constitution and the City Home Rule Law is not equivalent to a repeal or modification when the power to act has not been exercised. Repeal or modification can be accomplished only by appropriate action, and in its absence the power to act cannot be accorded the effect of action.

The power to repeal or amend local laws vested in the city of New York is not a self-executing one, and the authority of the Governor under the removal section of the charter is not affected by the unexercised right to repeal or change this charter provision.

Section 7 of article 10 was written into the Constitution in 1846 and provides:

" Removal from office * * *. Provision shall be made by law for the removal for misconduct or malversation in office of all officers, except judicial, whose powers and duties are not local or legislative and who shall be elected at general elections, and also for supplying vacancies created by such removal."

The petitioners contend that the right of sovereignty rests in the

People of the State, and that their right to select their rulers and be ruled by those of their choice can not be defeated or taken away unless that right has been surrendered by the exercise of the sovereign power of the People through constitutional grant. They assert that the power of removal of all local officers for misconduct has not been surrendered by section 7 of article 10 of the Constitution, and that such provision expressly, or by implication, imposes an inhibition upon the legislative power to provide for the removal of local officers, and, hence, that the removal provision of the charter is unconstitutional.

The People of the State, through their Constitution, have committed the law-making power to the Legislature. The regulation of the affairs of government, State or local, and all matters relating to public service and public officers, come within that power. That power is absolute, except as it may be expressly or impliedly withheld or limited in the Constitution. The powers reposed in the Legislature may or may not be exercised as it may chose. Prior to 1846 it undoubtedly had the power to provide for the removal from office for malversation of all public officers, State or local, unless a method of procedure therefor was expressly contained in the Constitution itself. The exercise of that power rested in its judgment and discretion.

Section 7 of article 10 did not restrict legislative power in that regard but made it the duty of the Legislature to act in respect to certain officers, and to that extent it was deprived of its discretionary power. The purpose of this section was mandatory and not inhibitory. Its command that an existing power be exercised in relation to some officers did not deprive or prohibit the Legislature from exercising the power which it possessed as to others and which it did exercise in the enactment of the removal section in the New York city charter.

In the case of *People* v. *Ahearn* (196 N. Y. 221), the validity of a removal provision of the New York city charter similar to the one here involved, was challenged as being in violation of the Constitution, and it was there stated: " That the provisions under which the Governor proceeded are constitutional and valid and that they did not violate either the letter or the spirit of those provisions which secure and guarantee the principles of local self government."

The conclusion is obvious that the authority conferred upon the Governor under section 122 of the Greater New York charter is a valid enactment and that such enactment exists in full force and effect and gives the Governor jurisdiction of the subject matter.

With jurisdiction free from constitutional restraint, the power of the executive to act is made complete by compliance with the

direction of section 1 of article 10 of the Constitution by giving to the accused officer a copy of the charges against him and an opportunity of being heard in his defense. Such compliance with the essentials to invest the Governor with power to proceed with the hearing has been made in the proceedings now before him.

The relator, James J. Walker, alleges in his petition that in the conduct of the hearing his constitutional rights have been violated by the use on the hearing of the testimony taken before a legislative committee, without producing the witnesses at the hearing, or giving the accused the opportunity of cross-examination; that the Governor has denied his demand that certain charges relating to alleged dereliction of duty occurring during the former term of office as mayor and not involving moral turpitude be dismissed. These allegations of the petition are not controverted.

The exercise of the power of removal by the Governor requires a hearing. " A hearing imports the presence of the accused, with full opportunity to cross-examine witnesses produced to support the charges, the right to be represented by counsel and to present witnesses to refute the charges." (*Matter of Connolly* v. *Scudder*, 222 App. Div. 591, at p. 595.)

Justice to an accused public officer, by many decisions of the State in removal proceedings of local officers, has been held to require a fair trial, and one where the opportunity exists to be faced by the witnesses and subject the credibility of their testimony to the test of cross-examination.

The policy of the State and the line of conduct for the Governor, as to the use of evidence acquired in a preliminary investigation in proceedings of removal by the executive, is declared in subdivision 4 of section 34 of the Public Officers Law (as amd. by Laws of 1928, chap. 15). It is there provided that " no evidence taken in such investigation (preliminary to the hearing on charges) shall form * * * the basis of any determination by the Governor, unless such evidence is presented at the hearing provided for in this section." This declaration is tantamount to the requirement that the witnesses be produced at the hearing.

Any removal of a public officer which is based upon evidence acquired in an investigation, preliminary in removal proceedings or of other character, where the accused has had no opportunity of cross-examination of the witnesses comes within the prohibition of this section, unless such evidence is produced at the hearing.

The requirement for a fair trial and the provisions of section 34 of the Public Officers Law do not countenance, in my judgment, the wholesale receipt and use of testimony taken by an investigating committee, where the accused officer has not been represented by

counsel or afforded the opportunity of cross-examination. The essentials for an adequate and fair hearing, conducted by administrative officers as well as by courts, have been generally held to afford an accused the right to be faced by his accusers, bound under the sanctity of an oath, and subject to cross-examination. These essentials in every proceeding where the opportunity to be heard exists have been zealously guarded and preserved when the power to do so could be exercised by judicial authority.

Governor Fenton, in a removal case *Matter of Brennan* (19 Abbott's Practice Reports, 376, 378) declared his concept of duty to permit the exercise of the power of removal only " upon clear, positive, and undoubted proof of the charges preferred."

The relator in this proceeding, as a matter of common justice, is entitled to receive that full measure of protection which has been accorded to others.

The removal section of the charter places no limitation on the nature of the act for which the mayor may be removed. It confers, without specification, the naked power of removal and subjects its exercise only to the constitutional procedure required for the removal of sheriffs.

It was not intended by this section of the charter to grant the arbitrary power of removal. Its fair intendment was to permit a removal thereunder only for cause, and for a cause relating to some act or omission on the part of the officer which amounts to official misconduct or violation of public trust, or one that involves moral turpitude. Charges when presented should be subjected to that test, and when they fail to meet it should be rejected as a basis for the exercise of the power of removal.

That the act or neglect justifying the removal must have relation to the administration of office during the term which the officer is serving has been pronounced and followed by numerous executive and judicial authorities. No greater power should be read into the removal section by implication. The application of this principle precludes the consideration of charges dealing with official acts or omissions occurring prior to the present term of the officer or in the transaction of his personal affairs, not within the scope of or affecting official action, unless such acts amount to moral turpitude.

The respondent, as Executive of the State, through his special appearance herein, has declined to submit himself or the subject-matter of this proceeding to the jurisdiction of the court. He stands upon his prerogative as Executive, and asserts his freedom from judicial process.

Under such circumstances, the power and responsibility for the

acceptance or rejection of the application of these precedents in the conduct of the proceeding pending before the Governor rest solely with him. It is not within the power of the court to impose or coerce compliance therewith upon the Executive. With jurisdiction of the proceedings, wherein the Governor is required to perform an executive act, the judicial branch of the government is powerless to command him how to act or that he refrain from action.

While as a general practice arbitrary power has no place in our system of government, judicial authority is clear and well established that in the functioning of the departments of government, executive, legislative and judicial, the Constitution has enumerated the powers and defined the limitations of each. One cannot encroach upon the other and have the balance of powers preserved. The respondent, as Governor of the state, is immune from interference by judicial process and free from judicial control in his performance of executive powers. A sphere of duty has been established for the Executive and within that orbit of power the exercise of his judgment and authority is immune from judicial encroachment.

Courts have no power over his person and they cannot commit him for a disobedience of judicial process. For errors, if any, of law or of fact in the proceeding now pending before him, he is responsible, not to the courts, but to the people, and to his own conscience. (*People ex rel. Broderick* v. *Morton*, 156 N. Y. 136; *Matter of Guden*, 171 id. 529; *Matter of Richardson*, 247 id. 401; *State* v. *Governor*, 25 N. J. Law, 331; *Matter of Hartranft* [*as Governor of the Commonwealth of Pennsylvania*], 85 Penn. St., 433; *U. S. ex rel. Dunlap* v. *Black*, 128 U. S. 40 at 44; *Sutherland* v. *Governor*, 29 Mich. 320; *Frost* v. *Thomas*, 26 Colo. 222; *Western R. R. Co.* v. *De Graff*, 6 N. W. 341.)

Orders may be entered denying the applications of the petitioners as a matter of law and not in the exercise of discretion, and dismissing the proceedings, without costs.