**2 So.2d 45**

STANLEY, Atty. Gen., v. JONES.

No. 36003.

April 10, 1941.

Rehearing Denied April 28, 1941.

Eugene Stanley, Atty. Gen., and J. I. McCain, Sp. Asst. Atty. Gen., for petitioner.

John R. Hunter & Son, of Alexandria, and Cawthorn, Golsan & Hunter, of Shreveport, for defendant James W. Jones, Jr.

ROGERS, Justice.

This is an original proceeding instituted by Eugene Stanley, Attorney General, under the authority of sections 1 and 5 of Article 9 of the Constitution of 1921, to remove James W. Jones, Jr., from the office of Judge of the Tenth Judicial District

Court for the Parishes of Natchitoches and Red River.

Section 1 of the constitutional article enumerates a number of causes for the removal of a judge of a district court. Section 5 of the article authorizes the Attorney General to bring a suit for such removal.

The matters and things which the Attorney General asserts as causes for the removal of defendant from his office are set forth in an original petition, containing eighty-four articles, and a supplemental petition, containing thirty articles. The defendant excepted to both petitions on a number of grounds. When the case was called for hearing on the exceptions, it was submitted on briefs filed by the parties.

The first question that arises under the exceptions is whether the defendant was legally cited or served with process.

The record shows that when a copy of the original petition was filed in this Court, the Chief Justice issued an order requiring defendant to answer the petition within fifteen days from the date of service and citation. A copy of the petition and attached order was forwarded by the Clerk of this Court to the Sheriff of the Parish of Natchitoches, where the defendant resides. The defendant was personally served with these papers, and a return showing the service was made by the Sheriff in due course.

Whatever may be the merit of the exception, considered from a technical standpoint, it can not avail defendant. After he was served with a copy of the petition

and order, defendant, without reservation, applied for and obtained an extension of time within which to plead. Defendant was also present with his attorney and participated in the taking, under an order of court, of the deposition of J. R. Cooley, a witness for plaintiff. By these acts, the defendant recognized that the case was in court and that he intended to submit to the jurisdiction of the court.

█ Any act of the defendant, except to object to the jurisdiction over his person which recognizes the case as in court, constitutes a general appearance. 6 C.J.S., Appearances, § 13, p. 42. A general appearance is one whereby the party appears and submits himself to the jurisdiction of the court for all purposes. 6 C.J.S., Appearances, § 1(a), p. 5; 3 Amer.Jur., Appearances, § 3, p. 783.

█ A general appearance waives any defects in the process, or notice, the steps preliminary to the issuance, or in the service or return thereof. 6 C.J.S., Appearances, § 17, c, p. 51.

█ An objection to the mode in which a case is brought before a court of competent jurisdiction must be made before a general appearance and a plea in bar. Schenley v. Commonwealth, 36 Pa. 29, 78 Am.Dec. 359.

█ A defendant who appears in the first instance in a case and moves for an extension of time to plead will be considered as having made a general appearance. 3 Amer.Jur., Appearances, § 21, p. 794.

In Modisette & Adams v. Lorenze, 163 La. 505, 112 So. 397, this Court, in line

with the general rule, held that defendant waives his right to plead to the jurisdiction of the court ratione personae by first asking for, and obtaining, further time in which to answer the suit, without any protest or reservation whatever.

■ Defendant appeared not only to ask for an extension of time within which to plead, but also for the purpose of cross-examining J. R. Cooley, one of the plaintiff's witnesses. The defendant insists that while he waived the notice of plaintiff's intention to take the testimony of the witness, he specially reserved all his rights, including his right to file any exceptions he wished to plead.

Defendant is mistaken. The record shows that while the order of this Court called for the taking of the deposition by Herman L. Midlo, a notary public for the Parish of Orleans, by consent of counsel representing the parties, the deposition was actually taken before J. A. Gannon, a notary public residing near Gorum, in the Parish of Natchitoches. In addition to the agreement relative to the change in notaries, the parties entered into the following agreement: "It is agreed that the deposition is to be taken with counsel reserving all rights of objection to be made at the time the testimony is offered in evidence. It is agreed that the procedure in this matter is acceptable to both sides."

The objections referred to in the agreement are clearly objections that counsel for defendant might desire to make to the admissibility or relevancy of the testimony and not for the purpose of reserving any right to file exceptions or other pleadings in the case.

■ The cross-examination of plaintiff's witness Cooley, by defendant's attorney, in defendant's presence, constituted an appearance by defendant in the suit.

In True Tag Paint Co. v. Wellman, 142 La. 1038, 78 So. 109, this Court stated: "That any appearance except distinctly for the sole purpose of objecting to the jurisdiction or to the citation amounts to an appearance which stands in place of citation."

In City of New Orleans v. Walker, 23 La.Ann. 803, this Court declared: "A want of citation is cured by the appearance of defendant in the suit for any other purpose than to allege the want of citation."

In First National Bank v. Johnson, 130 La. 288, 57 So. 930, 931, this Court said: "The rule is that an appearance to the suit, except for the purpose of objecting to the jurisdiction, or to the process or citation, subjects defendant to the jurisdiction of the court."

The defendant's appearance in the suit for the purpose of obtaining an extension of time within which to plead and for the purpose of cross-examining a witness for the plaintiff, without distinctly objecting to the jurisdiction or the citation, amounted to an appearance which stands in place of the citation.

■ The next question requiring consideration is defendant's plea of prematurity, which is predicated on the contention that defendant has never been charged, placed on trial, or convicted in the criminal courts on

any of the charges set out in the petition, a prerequisite for the institution of a suit for the removal from office. Defendant's brief does not contain any argument in support of the plea. For our own part, we do not find any merit in it.

In the case of State ex rel. Attorney General v. Lazarus, 39 La.Ann. 142, 1 So. 361, 375, this Court said: "The contention of the defense that the malfeasance or nonfeasance or gross misconduct charged, must, as a condition precedent to removal, be proved to be criminal or corrupt, is manifestly erroneous. It is absolutely untenable, either in reason or on authority."

In Saint v. Irion, 165 La. 1035, 116 So. 549, the Court held that a suit to remove a state officer was a civil and not a criminal proceeding. The cause of action in such a suit does not depend upon a prior conviction of the defendant for a criminal offense. There are some causes for removal set forth in section 1 of Article 9 of the Constitution, such as incompetency or habitual drunkenness, which are not criminal offenses. Any one of these causes, if proved, would be sufficient to require a judgment of removal.

■ Defendant filed an exception of no cause or right of action, the first ground of which is leveled at the offenses it is alleged he committed prior to his present term of office. Defendant contends that these offenses which are set forth in articles 16 to 22 of the petition, both inclusive, do not furnish a cause for his removal from office.

The petition, in paragraph 2, shows that the defendant served a term as judge of the Tenth Judicial District Court for the period of 1920 to 1924. He was again elected to the office for the term beginning January 1, 1931, and was re-elected in 1936 to hold the office until 1943. The defendant has served a six-year term beginning January 1, 1931, and is at present serving another term of six years to run through the year 1942.

This exception is in effect that the scope of the hearing should be limited to the offenses which the petition alleges were committed by defendant since his last election to the office in the month of November, 1936.

There appears to be some divergence of views among the courts with respect to the question of whether an incumbent could be removed from office because of his misconduct committed during a prior term. In an annotation to the case of Allen v. Tufts, decided by the Supreme Judicial District Court of Massachusetts, contained in 17 A. L.R. page 274, on the question of the removal of a public officer for misconduct during the previous term, it is said:

"The cases on the present question are in conflict. This is due in part to differences in statutes and constitutional provisions, but also in part to a divergence of views with respect to the question whether the subsequent election or appointment condones the prior misconduct. It cannot apparently be said that there is a decided weight of authority on either side of the question, although the courts and text-writers have sometimes regarded the weight of authority as denying the right to remove one from office because of misconduct during a prior term; and some courts which have held to the contrary have considered that the larger

number of cases favored this view. As will be seen from this annotation, the cases, numerically considered, are nearly evenly divided."

Among the cases cited, supporting the doctrine of misconduct during a prior term of the same office is not a ground for removal of a public officer, is the case of State ex rel. Attorney General v. Hasty, 184 Ala. 121, 63 So. 559, 50 L.R.A.,N.S., 553, Ann. Cas.1916B, 703. But in that case it was held that the acts of an officer during a previous term, though not grounds for impeachment, may be considered so far as they are connected or bear upon his general course of conduct during his second term, for the purpose of inquiring into his motive and intent as to the acts and allegations charged to him during his second term.

In State ex rel. Gill v. Common Council of City of Watertown, 9 Wis. 254, the Court, in holding that misconduct in the former term is not grounds for removal, said: "We do not say that in no case could acts done during a prior term, justify a removal. Thus, if, after a treasurer was elected, it should be discovered that during his prior term he had committed a defalcation, and been guilty of gross frauds in the management of his office, it might perhaps be just ground for removal." The Court went on to say further that where the charges show nothing more than a mere neglect of some formal duty involving no moral delinquency, which must have been well known to the appointing power, where they related entirely to acts done during the prior term, that they did not constitute a cause for removal. For such offenses,

the reappointment of the officer should be regarded as a condonation.

As shown in the annotation in question, 17 A.L.R. at page 285, although there are many cases holding that misconduct in prior terms of office is not ground for removal of a public officer, there is an equal number of cases to the contrary effect, that such misconduct may constitute ground for removal or impeachment. This state is listed among the states among which the latter rule prevails. And the cases referred to are State v. Lazarus, 39 La.Ann. 142, 1 So. 361; State v. Bourgeois, 45 La.Ann. 1350, 14 So. 28; State v. Whitaker, 116 La. 947, 41 So. 218.

Those cases arose under Articles 196 and 201 of the Constitution of 1879, which articles were embodied almost verbatim in the Constitution of 1921. In State v. Bourgeois, 45 La.Ann. 1350, 14 So. 28, 30, it was specifically held that acts denounced by Article 196 of the Constitution of 1879, which, with the omission of the words "for nonfeasance or malfeasance," is section 1 of Article 9 of the present Constitution, committed in a prior term by any officer who was his own successor, may form the foundation for a suit for removal from office. This holding was repeated in the case of State v. Bourgeois, 47 La.Ann. 184, 16 So. 655. In the first Bourgeois case, after referring to the constitutional article, this Court said: "We must therefore conclude that the articles were intended to remove an unworthy officer while in office, irrespective of the fact whether the act complained of was committed during his first or a subsequent term." The Court

quoted with approval the following statement by the Supreme Court of Nebraska, in the case of State v. Hill, 37 Neb. 80, 55 N.W. 794, 20 L.R.A. 573: "The fact that the offense occurred in the previous term is immaterial. The object of the impeachment is to remove a corrupt or unworthy officer. If his term has expired, and he is no longer in office, that object is obtained, and the reason for his impeachment no longer exists; but if the offender is still an officer he is amenable to impeachment, although the acts charged were committed in his previous term of the same office."

In the second Bourgeois case [47 La. Ann. 184, 16 So. 656], this Court, in rejecting a plea of prescription, explained the scope and purpose of the Constitutional articles providing for the impeachment and removal of public officers as follows: "These articles are in the public interest, to secure purity and efficiency in the administration of public offices. They provide for the removal of dishonest, unfaithful, or inefficient officers, and no prescription protects them while in office. Thus it has been determined that the removal proceedings may be for acts prior to the existing, but embraced within a previous, term of the incumbent," citing authorities.

In Allen v. Tufts, 239 Mass. 458, 131 N.E. 573, 576, 132 N.E. 322, 17 A.L.R. 274, the Supreme Judicial District Court for Massachusetts, with Rugg, Chief Justice upholding the rule that misconduct in a former term is ground for removal, expressed a similar view, viz., "The object of our statute is to purge the public service of an unfit officer. Such unfitness may arise from conduct in an office held continuously although during the term of an earlier election."

In State v. Whitaker, 116 La. 947, 41 So. 218, this Court held, as shown by the syllabus, that "if an offender is still in office, he may be removed, although the act charged was committed during his previous term of the same office."

Defendant relies on State ex rel. Wilkinson v. Hingle, 124 La. 655, 50 So. 616; State v. Young, 137 La. 102, 68 So. 241; State v. Dowling, 167 La. 907, 120 So. 593 and State v. Irion, 169 La. 481, 125 So. 567. But they are not appropriate. They are all cases involving contests for office in which the incumbent sought to retain his office on various grounds.

The other ground of the exception of no cause of action is predicated on defendant's contention that the charges contained in Articles 54 to 85, inclusive, of the original petition do not constitute high crimes and misdemeanors in office such as would justify his removal. Defendant does not dispute that the charges embodied in the petition, up to and including Article 53, would constitute gross misconduct, but defendant insists that the charges embodied in Articles 54 through 85 have no connection with the performance of his official duties.

The charges contained in Articles 54 through 58 refer to a suit for an injunction in which defendant was the primary party in interest and in which defendant issued a temporary restraining order directing the sheriff to seize certain election parapher-

nalia in possession of the judicial committee of the Tenth Judicial District Court.

Articles 59 through 65 charge that defendant, as a judgment debtor in the execution of which judgment his Chevrolet automobile was seized, used his official position to obtain possession of the automobile as custodian for the sheriff; that defendant sold the automobile without notice to the sheriff or to the judgment creditor, thereby illegally placing the automobile beyond the reach of the judgment creditor; that after the automobile was received by defendant as custodian, he filed a suit for an injunction against the judgment creditor and the sheriff to restrain them from proceeding with the execution of the seizure; that the defendant granted himself a temporary restraining order and issued a rule directing the sheriff and the judgment creditor to show cause why a preliminary injunction should not be granted. That the judgment under which the automobile was seized remains unpaid.

In Articles 66 to 72, inclusive, defendant is charged with taking an appeal from a judgment of $2,184.32, plus interest, obtained against him on a bill of lumber; that he caused John Williamson to sign as surety on the appeal bond without permitting him to read the bond, defendant stating that "it did not amount to anything at all"; that Williamson signed the bond, setting forth he was worth over the sum of $4,782, while the fact was that he had never been worth as much as $500; that defendant also signed the bond, stating that Williamson was worth the sum of the bond, although defendant well knew that William-

son was in indigent circumstances, uneducated, and unaware of what he was signing; that defendant, due to his official position and prestige as judge, inveigled Williamson into signing the bond, thereby using his office as a means to commit perjury and fraud.

In paragraphs 73 through 78, the petition alleges that defendant's judgments have been reversed or amended by the appellate courts in 120 out of 158 cases, which clearly indicates the incompetency of defendant for holding his office.

Paragraphs 80 through 82 list a number of obligations, including judgments, notes, and "hot" or "rubber" checks, which it is charged defendant has refused to pay, and that he has used the power of his office to prevent his creditors from enforcing them, notwithstanding that defendant is wealthy and fully able to discharge his obligations in full.

Article 83 contains the general allegation that the reputation of the defendant for using the power of his office as a means to defeat his obligations has created in his judicial district among the general public a lack of confidence in the impartial administration of justice and respect for the dignity of the courts.

Articles 84 and 85 embrace general allegations based on the prior allegations as to the unfitness of defendant to occupy the office of judge of the district court.

So far as defendant's motion to strike is concerned, it suffices to say that such a motion is not authorized by the laws of this State. State v. Caldwell, 195 La. 507, 197

So. 214; Perez v. Meraux, 195 La. 987, 197 So. 683.

The charges embodied in Articles 54 to 85 of the original petition are of a serious nature. Many of them involve official misconduct and all of them involve gross misconduct.

It is well settled that if the cause specified in the law is "misconduct in office," misconduct sufficient to justify a removal must be misconduct in the conduct of the office, and not merely personal misbehavior. Where, however, the cause for removal is misconduct simply, removal may be made for misconduct not connected with the office. 46 C.J., Officers, § 150, p. 987.

Section 1 of Article 9 of the Constitution of 1921 reads as follows: "All State and district officers, whether elected or appointed, shall be liable to impeachment for high crimes and misdemeanors in office, incompetency, corruption, favoritism, extortion, or oppression in office, or for gross misconduct, or habitual drunkenness."

According to the constitutional article, a district judge may be impeached and removed from office not only for "misdemeanors in office," but also for "gross misconduct" not connected with the office.

Misconduct and misdemeanor are synonymous terms. Vide, "misconduct", Webster's New International Dictionary, Second Edition.

Misdemeanor in office is synonymous with misconduct in office. Yoe v. Hoffman, 61 Kan. 265, 59 P. 351; Reid v. Trinity County Superior Ct., 44 Cal.App. 349, 186 P. 634.

The phrase "misconduct in office" is broad enough to embrace any willful malfeasance, misfeasance, or nonfeasance in office. It does not necessarily imply corruption or criminal intent. 40 C.J., Misconduct, p. 1221.

Any act involving moral turpitude which is contrary to justice, honesty, principles, or good morals, if performed by virtue or authority of office, constitutes "misconduct in office."

It will therefore clearly appear that the expression "misdemeanor in office," as used in section 1 of Article 9 of the Constitution, means "misconduct in office" and the use of such expression to describe one of the causes for the impeachment and removal of an officer does not necessarily exclude the use of the term "gross misconduct" for the same purpose.

It would seem to be almost too plain for argument that if the framers of the Constitution had intended that a public officer could be impeached and removed from office only for official misconduct, they would not have specified "gross misconduct" as an additional cause for impeachment and removal. In enumerating a number of acts as causes for impeachment and removal from office, if the acts are connected with, or relate to, their official duties, the constitutional provision specifies "gross misconduct" and "habitual drunkenness" as further causes for impeachment and removal. Certainly it can not be said that the "habitual drunkenness" specified

in the constitutional article must have some connection with, or relate to, the performance of official duties. Nor do we think it can be said that the "gross misconduct" specified in the constitutional article must be connected with the office, so as to warrant the impeachment and removal of the officer; otherwise, "habitual drunkenness" and "gross misconduct" would not be mentioned as causes for removal apart from a number of other causes for removal growing out of official acts, among which is expressly mentioned "misdemeanors in office."

Defendant filed an exception of vagueness directed at articles 11, 13, 20, 26 and 47 of the original petition.

Articles 13 and 20 are two of the articles in which it is charged that on or about June 18, 1937, on the streets of the City of Natchitoches, one Guy Sherrill, of the City of Alexandria, paid the defendant a bribe of $200 for a favorable decision in three cases then pending before defendant, and that on July 15, 1937, Sherrill paid defendant $100 as an additional bribe for a favorable decision in the same cases. The three cases involved in the transaction are referred to by title and number.

Defendant complains that the petition is vague because it fails to allege where or when the alleged bribes were given, who was present at the alleged conversation, and the subject matter thereof.

Plaintiff sets forth the amount of the bribes, the places where, and the dates when, they were paid. Plaintiff states that the persons present were Sherrill and the defendant himself, and that the subject of

the conversations was the giving and receiving of a bribe for immediate and favorable decisions in the three cases. Articles 5 to 15, both inclusive, when read together clearly show the circumstances under which, and the purpose for which, the meetings were held.

Article 20 of the original petition, in connection with other articles of the petition, shows that during the month of August, 1936, the defendant was paid $1,000 as a bribe to use his influence with the grand jury of the Parish of Natchitoches to prevent the indictment for manslaughter of one Malcolm Bahcall, for causing the death of a young lady in an automobile accident, which occurred in Natchitoches on February 25, 1936. The petition alleges that the bribe was paid to defendant at Bayou Natchez, in the rear of Freedman's Store, by one Irve J. Spence, representing Malcolm Bahcall who furnished the $1,000.

Defendant avers that the allegation is vague because it fails to set forth the day and hour of payment and who was present at the time. The petition gives the date of the alleged bribe as August, 1936, and states the place where, and by whom, and for what purpose, the bribe was given. The gravamen of the charge against defendant is that he received a bribe for using his influence as the judge of the district court with the grand jury. The amount of the bribe, the person by whom it was given, the place and the approximate time it was given, and the purpose for which it was given are set forth in the petition.

Defendant avers that Article 26 of the original petition is vague because it fails

to state who was present at the time an agreement to give a bribe was entered into by one J. R. Cooley and the defendant.

The petition alleges that the agreement was entered into on December 15, 1932, by J. R. Cooley and the defendant in the office of the defendant with only Cooley and the defendant present. The amount of the bribe and the purpose for which it was given are stated.

In Article 47 of the original petition and related articles, plaintiff charges that defendant falsified his expense accounts. Defendant avers that the petition is vague because it fails to state which accounts are false and that plaintiff should be required to set out in detail the excess of the actual expenses incurred by defendant. The petition shows the amounts drawn by defendant for traveling expenses and also shows the number of trips defendant was required to take in the performance of his official duties. The petition also shows the number of trips defendant claimed to have made and the number of trips defendant actually made. Plaintiff alleges that the expenses claimed by defendant were excessive to the extent of the trips that were not actually made by defendant. So far as defendant's request that plaintiff should be required to set out that excess in detail, it suffices to say that the details are within the knowledge of the defendant himself and it would serve no useful purpose to compel the plaintiff to set them out.

Where a petition is explicit in substantial particulars, there can be no just reason for maintaining that plaintiff's cause of action is vague. Godchaux v. Bauman, 44 La.Ann. 253, 10 So. 674. Verbal precision is not exacted and technicalities are not favored in our system of pleading. Regard is paid to the general force and meaning of the allegations, considered together; and when thus considered, they present a cause of action, and they should be given effect. Kellar v. Victoria Lumber Co., 45 La.Ann. 476, 12 So. 511.

All that was required of plaintiff was to fairly inform defendant of the offenses with which he was charged so as to enable him to prepare his defense. We think that plaintiff has done this and that the allegations of the petitions, taken together are sufficient to place defendant on his guard and not take him by surprise.

Defendant has filed three exceptions to the supplemental petition in which he makes the same points that he made in the exceptions filed in the original petition. These exceptions are a plea to the citation, a motion to strike, and an exception of no cause or right of action in which defendant seeks to limit plaintiff's action for removal to the offenses committed during his present term of office.

In disposing of the exceptions to the original petition, we have also disposed of the exceptions to the supplemental petition.

Our conclusion is that there is no merit in defendant's exceptions.

Defendant has filed a motion to rescind the order for his suspension entered in this proceeding on the ground that the order contravenes the provisions of section 7 of Article 9 of the Constitution of 1921.

It would appear from reading the article that its provisions do not apply to judges of district courts.

The first paragraph of the article authorizes the State, Attorney General, or District Attorney at whose instance a suit for removal is brought to appeal, which appeal, in the case of State and district offices, lies to this Court, and all other appeals lie to the courts of appeal of territorial jurisdiction. The second paragraph of the constitutional provision, which is relied on by defendant, reads as follows: "No suit for removal shall work a suspension from office; but the trial court may, by rule nisi and contradictory hearing, after ten days notice, suspend any officer, subject to a review by the proper appellate court, and such office shall be filled by the appointing power until the cause is finally decided."

The provisions of the article apparently apply to those State and District officers whose removal must in the first instance be sought in the district courts of their domicile, because it provides for appeals from the judgment of removal and also for appeals from an order of suspension issued after contradictory hearing.

Under section 5 of Article 9 of the Constitution of 1921, judges of courts of record can be removed only by a judgment of this Court, which is vested with original jurisdiction thereof, and from which judgment there is no appeal.

The facts alleged in the petition for defendant's removal disclose a sufficient cause for assigning a judge of another district to supersede defendant pending a final decision in this proceeding. As we said in the previous suit for removal instituted against the present defendant and reported in Coco v. Jones, 154 La. 124, 97 So. 337, 341, "our authority to make such an assignment is conferred, not by the provisions for impeachment or removal from office, in article 9, but by section 12 of article 7 of the Constitution. The matter may therefore be dealt with in a special order of the court."

For the reasons assigned, all the exceptions filed by defendant are overruled, and defendant's motion to rescind the order of his suspension is denied.

LAND, J., absent.