407 P.2d 571

The STATE of Utah, Plaintiff and Respondent,

v.

David P. JONES, Defendant and Appellant.

No. 10418.

Supreme Court of Utah.

Nov. 18, 1965.

Brant H. Wall, Salt Lake City, for appellant.

Grover A. Giles, Salt Lake County Atty., Ollie McCulloch, Deputy Salt Lake County Atty., Salt Lake City, for respondent.

CROCKETT, Justice.

This action was brought to remove David P. Jones, incumbent Salt Lake County Auditor, from that office under the provision of Sec. 77–7–1, U.C.A.1953:

> All officers not liable to impeachment shall be subject to removal for high crimes, misdemeanors or malfeasance in office as in this chapter provided.

The defendant had served a term as Salt Lake County Auditor, 1950 to 1954; and after a term out of office, was again elected in 1958 and took office in January, 1959. In 1962 he was re-elected to another four-year term. In the spring of 1965 he was charged in the Federal Court with failing to file his income tax return which had been due April 15, 1959, which offense was thus prior to his present term of office. On April 7, 1965, he entered his plea of guilty thereto. Shortly thereafter, on May 5, 1965, the Salt Lake County Attorney commenced this action to remove him from office, based upon his conviction of that offense.

The defendant made a motion to dismiss the complaint on two grounds: that this offense is not within the purview of the statute above quoted; and that the statute of limitations had run on any action based thereon. The motion was denied and upon defendant's petition we granted an intermediate appeal to review that ruling.

We regard the first proposition just stated as the important and controlling one

here. There is no contention that his offense was in any way connected with carrying on his official duties as county auditor, nor, insofar as is disclosed in this proceeding, is there any imputation that he has been at fault in the performance of such duties.[1] In the bill of particulars supplied by plaintiff and upon which it relies it specified only that the defendant had pleaded guilty to the offense above stated of failing to file a Federal income tax return. Thus, our concern is not with his conduct in office, but whether failing to file a Federal income tax return, which is made a misdemeanor by Federal law,[2] comes within the class of crimes which it was intended under our Constitution and statute would require him to forfeit his office.

Similar statutes, but varying as to form and wording have been adopted in most of our sister states. Their objective is to provide a method of removing from office a public official, even though duly elected, who betrays his trust in office, i. e., is guilty of malfeasance, or who commits a crime of such nature as to demonstrate that he is unfit to hold public office. The meaning and the proper application of such a statute is determined by giving consideration to its language in the light of its background and that purpose.[3] These statutes are not of common law origin, but are creatures of legislative enactment. Due to the seriousness of their consequences, both to the individual in the forfeiture of his office, and as an intervention in the processes of democracy, proceedings under them are properly regarded as quasi criminal in nature.[4] Accordingly, the statute should be strictly construed against the authority invoking it and liberally in favor of the one against whom it is asserted.

It could be regarded as significant that in the language that public officers, "shall be subject to removal for high crimes, misdemeanors or malfeasance in office" the term "high crimes" is separated by a comma, leaving the terms "misdemeanors or malfeasance *in office*" together in the same phrase. Looking at it thus, it could well be taken to mean that if the offense involved is a "high crime" it should result in removal, though not connected with the conduct in office; whereas, reading the remaining phrase together, it would say that an official could be removed for "misdemeanors or malfeasance *in office*," indicating that for either of these the offense must be in connection with official duties. This admittedly would place a great deal of stress

1. In this respect differing from the recent case of State v. Geurts, 11 Utah 2d 345, 359 P.2d 12.
2. Int.Rev.Code of 1954, Section 7203.
3. That statutes should be looked at as a whole and in light of the purpose, see Andrus v. Allred, 17 Utah 106, 404 P.2d 972; 2 Sutherland, Statutory Construction, Sec. 5002 (3d Ed. 1943).
4. See State v. Geurts, supra, footnote 1.

on the use of the comma, which we think it is unnecessary to consider here because there are what impress us as more substantial reasons which impel the conclusion that the offense charged does not come within the meaning of the statute.[5] We therefore set aside as not confronted here the question whether there may be some misdemeanors, even though not committed directly within the conduct of the office, which alone or in conjunction with others may be of such a nature as to subject an official to removal from office. However, in regard to that proposition, we note that counsel has not cited, nor has our research discovered, any case where an official has been removed for an offense of this character, nor for any other single misdemeanor not related to the conduct of his office.[6]

If it had been intended that removal from office should result from committing just any crime, including all misdemeanors, that could have been achieved by simply stating the generality: that an official could be removed for any crime. Inasmuch as this was not done and the statute states that an officer shall be subject to removal for "high crimes" and "misdemeanors" and "malfeasance," it must be assumed that there was a reason for using each of those terms and each should be given some meaning.[7] Nevertheless, so used together and directed toward the same objective they should be deemed to take character and meaning from each other.[8]

The term "high crime" as used in statutes such as this is generally understood to mean not only a serious offense, but one in which there is harm or injury directed against other persons and is thus a violation of the basic mores of society, e. g., robbery, burglary, larceny, embezzlement or some crime of a character which involves such moral turpitude or is so offensive to accepted standards of honesty or integrity that one guilty of such a crime is unfit for

5. It will be noted that Sec. 21 of Article VI of the Utah Constitution provides for removal of all officers not liable to impeachment "for any of the offenses specified in this article;" and that Sec. 19 lists "high crimes, misdemeanors, or malfeasance in office; * * *" with a comma after "misdemeanors." But the legislative implementation of these sections, now U.C.A. 77-7-1, 1953, since its enactment in 1896 appeared originally without the comma and so persists in our present statutes.

6. But see Attorney General v. Tufts, 239 Mass. 458, 131 N.E. 573, 132 N.E. 322; 17 A.L.R. 274, wherein a number of offenses, including acts as a private citizen, were charged against a district attorney in removal proceedings. The court stated that wrongs outside his official duties could be considered in determining his fitness to hold public office; see also Stanley v. Jones, 197 La. 627, 2 So.2d 45, under a much different statute; see also 67 C.J.S. Officers § 60, p. 251.

7. See Dunn v. Bryan, 77 Utah 604, 299 P. 253; Glenn v. Ferrell, 5 Utah 2d 439, 304 P.2d 380; 50 Am.Jur., Statutes, § 358.

8. See Heathman v. Giles, 13 Utah 2d 368, 374 P.2d 839; W. S. Hatch Co. v. Public Service Commission, 3 Utah 2d 7, 277 P.2d 809; 2 Sutherland, Statutory Construction, § 4908 (3d Ed. 1943).

a public trust and should therefore be removed from public office. Considering the terms of this statute together in context and in the light of its purpose, it seems only reasonable to suppose that for a misdemeanor to work a forfeiture of office it should partake somewhat of the same character. This is necessarily so because it can hardly be credited that it was intended that a public official should be removed from office for any failure to comply with any requirement of the law down to jaywalking, improper parking, or spitting on the sidewalk, whether related to his conduct in office, or to his qualifications for it or not.

There are various considerations which have a material bearing on the question whether the offense here charged is of such nature that one guilty of it should be deemed unfit for public office within the intent of this statute. One of these is that at the time of the adoption of our Constitution and of the enactment of this statute neither this particular offense nor anything akin to it could have been in contemplation · as a ground for removal because the income tax itself and the requirement for filing returns came into being long afterward.[9] Another is that this offense does not include any imputation of falsification or fraud with respect to the

defendant's income tax, so that particular aspect of moral wrong is not present. Nor does it involve any harm or injury directed against any other person and is thus not an offense malum in se, that is, inherently and essentially evil or immoral. The failure to file a tax return is a violation of one of the many legal duties imposed by law as an adjunct to the complexities of modern society. It is an offense malum prohibitum, a wrong because it is made so by statute, and thus of a character not generally considered to be inherently evil, as in the case of offenses which are malum in se.

What may have been the defendant's reason for not filing his income tax is not disclosed by the record. Whether it was for the purpose of tax evasion, or lack of funds, or a personal vendetta with the Federal government over income tax and/or the purposes to which it is put, as has been done by some citizens, including some prominent ones, is not disclosed by the record, and conjecture thereon is neither justified nor helpful here. We do observe that it is not our purpose or desire to condone or justify the defendant's dereliction, nor to minimize the importance or the necessity of citizens filing their income tax returns on time and paying taxes justly due. It is of course desirable for everyone, es-

9. The Utah Constitution became effective January 4, 1896; Section 77-7-1, U.C.A. 1953 first appeared in the Revised Statutes of Utah, 1898, as Section 4565; Amendment XVI to the Constitution of the United States, allowing the Federal income tax, became effective February 25, 1913.

pecially public officials, to conform to the law in all respects, and in fact to live exemplary lives. But unfortunately public offices must be staffed with people beset with human frailties and we must deal with them as such. That the defendant did not live up to an exemplary standard is not to be questioned. But upon the basis of the various considerations set forth herein, it is our conclusion that the offense he committed is not shown to be within the class of crimes which it was intended under our statute that guilt thereof would demonstrate such a lack of honesty, integrity or moral character as to render one unfit for public office and to compel its forfeiture.

Underlying the problem here dealt with, and supporting the conclusion we have reached, is the principle, fundamental in our democracy, that the privilege of choosing and electing public officials, and repudiating them if and when they so desire, belongs exclusively to the people; and that neither the courts nor any other authority should be hasty to encroach upon that right. There could be no more certain move toward the exercise of autocratic control and the disruption of our greatly valued balance of power than for one branch of the government to usurp prerogatives not belonging to it.[10] Out of our Constitutions, Federal and State, and the historical development thereon, there is reposed in the courts the responsibility of passing judgment upon the actions of public officials and the functions of the departments of government. Both experience and wisdom teach that the greater the power the greater the duty of exercising forbearance in its use. An awareness of the dangers that could come from courts arrogating to themselves arbitrary powers emphasizes the necessity of approaching such matters with caution and with judicial restraint;[11] and of refusing to interfere with the orderly processes of government except under circumstances where it is clearly apparent that the legislative mandate or constitutional provision requires it to be done.

In connection with his plea of too long delay in commencing this action the defendant argues that the offense was committed prior to his election to his present term of office;[12] and also that because

---

10. See statements re balance of power in Wood v. Budge, 13 Utah 2d 359, 374 P. 2d 516; and Parkinson v. Watson, 4 Utah 2d 191, 291 P.2d 400.

11. See statement re judicial restraint in Stickle v. Union Pacific R. Co., 122 Utah 477, 251 P.2d 867; see also the statements of Justices Frankfurter and Harlan in dissenting opinions in Baker, et al., v. Carr, et al., 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

12. That misconduct during a *prior term* of office is not grounds for removal see: Jacobs v. Parham, 175 Ark. 86, 298 S.W. 483; State v. Scott, 35 Wyo. 108, 247 P. 699; State ex rel. Boynton v. Jackson, 139 Kan. 744, 33 P.2d 118, 100 A.L.R. 1394; Donnelly v. Roosevelt, 144 Misc. 525, 259 N.Y.S. 356; but see contra: State ex rel. Timothy v. Howse, 134 Tenn. 67, 183 S.W. 510, L.R.A.1916D, 1090; State v. Welsh, 109 Iowa 19, 79 N.W. 369;

more than six years elapsed before this action was brought, it would be barred under limitations prescribed for either civil or criminal cases.[13] We appreciate that various problems are posed by these contentions and the following responses thereto made by the State: that this is a proceeding of the same nature as impeachment, upon which the law has provided no limitation, except perhaps that of laches; that the statute would not begin to run on the date when the failure to file was committed, but only after the discovery of the offense; and the claim that it is a continuing offense, committed not only on April 16, 1959, when the income tax return was due, but each day thereafter until it was filed. However, inasmuch as we have concluded as above indicated that the offense here involved is not of the character included within the removal statute, questions relating to the statute of limitations are moot, and it therefore would serve no useful purpose to further concern ourselves with them here.

The proceeding is ordered dismissed. No costs awarded.

Hawkins v. Common Council of City of Grand Rapids, 192 Mich. 276, 158 N.W. 953. See also annotations in 17 A.L.R. 279; 138 A.L.R. 753.

13. As to civil proceedings, Sec. 78-12-25, U.C.A.1953, states that actions not otherwise provided for must be commenced within four years; a criminal action would

McDONOUGH and CALLISTER, JJ., concur.

WADE, J., concurs in the result.

HENRIOD, Chief Justice (concurring).

I concur in the result for two reasons.

In this action for removal for dereliction *in office*, Jones 1) denies any such offense in connection with the operation of his office[1] and 2) that the limitations statutes are applicable in any event.[2]

As to 1): His default in failing to file a tax return had nothing to do with the operation of his office as auditor, and such default is not a misdemeanor involving moral turpitude. Such failure has the status of any of many misdemeanors, such as traffic offenses, smoking in certain places, failing to report accidents, failing to have a driver's license on the person, failing to get license plates on time and driving thereafter before obtaining them,—none of which, per se, reflect any dishonesty in carrying out statutory duties of an elective office, or of gross inattention to any such duties.

have to be commenced within three years under Sec. 77-9-3, U.C.A.1953.

1. Title 77-7-1, U.C.A.1953: "All officers not subject to impeachment shall be subject to removal for high crimes, misdemeanors or malfeasance in office * * *."

2. 77-9-3; 78-12-25, U.C.A.1953; 26 U.S. C.A., Sec. 6531.

As to 2) : The three limitations statutes mentioned were in each case a bar to an action unless it be decided that there was a continuing offense and the statutes became operative only after discovery of the offense, as the State contended was the case here. Under such contention, if it is a continuing offense, discovery of it makes it no less a continuing offense, so that discovery would have no significance, and the offense could be charged at any time irrespective of discovery.

Limitations statutes are legislation of repose. Any penitent person, who as a young man of 22 burglarized a place of business would be somewhat surprised to learn, at 42, he could be convicted of his nocturnal second-story soiree, because one discovered the event 20 years later. The prosecutor as well would be startled. Besides, one wonders who must do the discovering,—the prosecutor, the Governor, the accused's wife, or someone else.

The main opinion says the limitations statute is moot. This may be true in a sense, in light of our decision here, but I am of the opinion that the matter having been presented to us with considerable conviction, that it would not be amiss to decide this case on both, not one of the issues raised, in order to resolve the question based on the facts of this case, should the problem recur.