345 P.2d 186

**STATE of Utah, Plaintiff,**

**v.**

**Hon. Merrill C. FAUX, Judge of the District Court of Salt Lake County, and All the Judges Thereof, Defendants.**

No. 9117.

Supreme Court of Utah.

Sept. 10, 1959.

Jay E. Banks, Dist. Atty., Arthur A. Allen, Jr., Salt Lake City, for plaintiff.

Calvin L. Rampton, Salt Lake City, for defendants.

CROCKETT, Chief Justice.

The District Court issued an order that counsel for Theodore I. Guerts, City Commissioner of Salt Lake City, facing trial on an indictment by a Grand Jury for "Misconduct In Office," be permitted to examine the transcript of the testimony of witnesses listed on the indictment. The District Attorney sought and obtained from this Court an alternative writ prohibiting such inspection. Our question is whether the writ should be made permanent.

The District Attorney contends that the transcript is available to him only and argues that furnishing it to defense counsel would remove secrecy from the Grand Jury proceedings and hamper its effectiveness.

The contentions of the parties center upon Secs. 77–19–9 and 10, U.C.A. 1953. Section 9 provides that the testimony of witnesses before the Grand Jury shall be taken by a reporter and a transcript thereof furnished to the County Clerk and to the District Attorney, and further states:

"No person to whom a transcript of the testimony has been delivered * * * shall exhibit said transcript * * * to any person *except upon written order of the court duly made after hearing* the persons in whose custody said copy is placed; except that said testimony so transcribed may be used by the prosecuting attorney to impeach the testimony of any witness appearing at the trial of a person indicted * * * or of a person accused of and being tried for perjury." (Emphasis added.)

Section 10 is entitled "Proceedings to be kept secret—Exceptions." It is concerned with proceedings in the grand jury room.

"No member of the grand jury, nor any person at any time present at any session of the grand jury, shall disclose what he himself or any other grand juror or person may have said at such session. No grand juror shall divulge in what manner he or any other grand juror may have voted on a matter before them; *any grand juror or other person may, however, be required by any court to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court,* or to disclose the testimony given before the grand jury by any person upon a charge against such person for perjury in giving his testimony, or upon his trial therefor." (Emphasis added.)

The language emphasized makes clear that the provision for secrecy is qualified by the exception that the testimony given

by witnesses before the Grand Jury may be disclosed for the purpose of impeaching such witnesses in the event of a trial. This court so held in the case of State v. Harries.[1]

It must be conceded that Grand Jury proceedings have historically been kept secret insofar as that is practical, for the valid purpose of giving it the greatest possible facility and independence in its investigation. The reasons for secrecy are generally stated to be these: (1) To prevent persons from covering up illegal operations or from fleeing while an indictment against them is under consideration, (2) to protect the Grand Jury or individual jurors from being subjected to pressure by persons who may be involved, (3) to encourage the witnesses to give the Grand Jury full information by protecting them from being influenced or tampered with by fear, favor or other improper means, and (4) to guard against any defamation of persons informed against, by accusations which may be false, until they can be investigated and verified, and (5) the reason is also sometimes given that it will avoid giving prospective defendants an opportunity to fabricate perjured defenses.

It will be noted that after the indictment is returned and an accused is arrested, the reasons for secrecy have largely been spent. As the writer views it, the furnishing of a·defendant with a basis for preparation of perjured testimony has little or no validity. If he will engage in such unlawful machinations, the time element is not going to prevent it and other processes of law must cope with such unlawful conduct. As to an indicted defendant and the testimony which has been given against him, the only remaining reason of any importance for preserving secrecy relates to the protection of the witnesses and the effect disclosure of their testimony prior to trial may have on future witnesses before Grand Juries. An analysis of the order made will demonstrate that this consideration has little or no validity here.

We are not aware as to what assurances in regard to secrecy have been made to such witnesses. But our law makes it so plain as to be incontestable that witnesses appearing before a Grand Jury could not lawfully be promised permanent secrecy as to their testimony. If an indictment results, Section 77–20–2, U.C.A.1953 requires that the names of the witnesses who have testified before the Grand Jury in the case be listed upon the indictment. Thereafter the subject matter of the indictment and the identity of the witnesses can no longer be secret. The only purpose such listing can possibly have is to advise the defendant who the witnesses are. Any witness who testifies before the Grand Jury must know that if an indictment and prosecution results he is subject to being sub-

I. 118 Utah 260, 221 P.2d 605.

poenaed to testify either by the prosecution or by the defense to the end that the full truth be revealed and that there be proper and efficient administration of justice. No one even contends to the contrary. If the rule were otherwise, this purpose would be thwarted and witnesses might tell irresponsible tales before Grand Juries.

The case of State v. Harries, referred to above, is the only case in which this Court has dealt with the problem of the use of the transcript of testimony of witnesses before the Grand Jury for purposes of impeachment. There the trial court had refused defense counsel's request to examine the transcript prior to trial, but accorded the privilege during the trial. In upholding the trial court's action, this Court indicated that under our statutes the defendant was entitled to use such transcript for the purposes of impeachment at the trial, but held that the court had committed no error in not furnishing it before the trial because that lay within the court's discretion. Through Justice Latimer the Court stated [118 Utah 260, 221 P.2d 613]:

> "The defendant is not entitled to inspect a copy of the transcript *before trial as a matter of right.*" (Emphasis added.)

That defense counsel may examine the transcript for the purposes of impeachment being established, that question is not now before us for adjudication. The sole issue is *when* it may be permitted. And more specifically, did the District Judge act beyond his authority in ordering such examination prior to the trial?

It should require no elaboration to demonstrate how cumbersome and difficult it would be to compel counsel to wait until each witness had testified upon direct examination, then procure the transcript pursuant to the order authorized by the statute, and thereafter determine whether impeachment should be pursued. It is obvious, of course, that the defense cannot know whether the prior testimony of the witness was inconsistent with the testimony given at the trial unless he knows what the testimony before the Grand Jury was. It is quite unlikely that a witness would voluntarily reveal that he had previously testified differently. To give the defendant the theoretical right to use the transcript to impeach the witnesses and then make it so difficult to use as to be ineffectual would be but an empty delusion, unworthy of our standards of fairness to both sides in such a trial.

We remain aware of the investigatory nature of the Grand Jury's activities and of the necessity for secrecy, insofar as practical, to provide it with an atmosphere of confidence and assurance so that it may effectively carry out its functions. On the other hand, the rights of one accused of crime are in no wise to be belittled nor ignored. The fundamental purpose of a

criminal trial is not solely to convict the accused. It is to seek the truth and administer justice. While secrecy may be justified at certain stages of the proceedings for the purposes hereinabove indicated, all fair-minded persons will concede that ultimately the full truth should be revealed to the court and jury. In such instance the truism should be recognized that the truth should have nothing to fear from light.

Our law has come a long way since the days of the English Star Chamber when men were tried without being present and condemned on testimony of witnesses whom they were never permitted to see. If anyone is under the illusion that in this country one may be condemned for alleged crime upon evidence taken in his absence and kept secret from him, it is heartening to be able to point out that such is not the state of our law. Fortunately such proceedings are not now regarded as among the brightest chapters in the development of our system of justice. Such it was that prompted the requirement that the names of the witnesses must be placed on the indictment, and that the accused has the right to be confronted with the witnesses against him.[2] Any thought that one's rights or reputation may be invaded or destroyed by unidentified informers is foreign to the ideals of American justice. Only by respecting the rights, the dignity and the importance of every man, however odious the offense charged, or however unpopular his cause, can we measure up to our vaunted ideal of equal justice under law. If we do less we foresake that ideal and defile the name of justice.

In view of the fact that the Court deemed defense counsel entitled to use the transcript he directed that the opportunity to examine it be afforded a reasonable time before trial so that he could properly prepare his defense and the trial could proceed with efficiency and dispatch.

To contend that the order under scrutiny here would have the effect of laying open proceedings of the Grand Jury to the public is to distort the true effect of the order for the purpose of making a specious attack upon it. The Court appears to have been fully cognizant of the importance of preserving the confidence and secrecy of the Grand Jury's activities for the purposes indicated in this opinion, and of the difficulties to be encountered in not doing so. He heard the arguments of counsel relating to the issues to be tried and deemed it necessary in the interests of justice to permit defense counsel to examine the transcript in accordance with the provision in 77–19–9 that the transcript shall be exhibited to no one, "except upon written order of the court duly made after hearing. * * *" Inasmuch as the District Attorney is ex-

2. Art. I, Sec. 12, Utah Const.

356

·pressly authorized to use the transcript, the only possible meaning this language could have is to permit some other use of the transcript. What more likely "other" use could there be than for the defendant, who is most vitally concerned in the matter?

The trial judge, discreetly and properly circumscribed the procedure so that only material portions of the transcript of the testimony of witnesses would be exposed and then only to the extent he deemed the ends of justice required it. None of the statements, discussions, actions, or votes of the grand jurors are in any wise to be disclosed. The transcript is to be examined by only one person, defense counsel, who is an officer of the Court, under strictly limited circumstances. The order included these restrictions: that the District Attorney should "screen" the testimony of such witnesses and make available to defense counsel only portions relevant and material to the case; that the inspection should be made in the office of the District Attorney; that defense counsel could make no copy but only take notes as to substance; and that the latter should not reveal to any other person any of the contents of said record except as it might become material for impeachment at the trial. No case has been cited, and we are aware of none, which holds that an order so carefully preserving secrecy of the Grand Jury proceedings is an abuse of discretion.

In the recent case of Pittsburgh Plate Glass Co. v. United States,[3] the United States Supreme Court divided five to four on the question whether the trial court had abused its discretion in refusing the defendants permission to inspect Grand Jury minutes covering testimony of a key Government witness. The Government had offered to let the trial judge screen the testimony and to allow inspection of material portions, which offer the defendant rejected. For the majority, Justice Clark reviewed the authorities and arguments for Grand Jury secrecy; for the minority Justice Brennan similarly covered the desirability of permitting full disclosure to the defense, and stated that the court had abused its discretion in refusing it. However, it will be noted that both opinions reflect that the question of disclosure rests in the sound discretion of the trial court. To the same effect see the recent case of State ex rel. Clagett v. James.[4] See annotation at 127 A.L.R. 272 for collation of authorities pro and con as to secrecy of Grand Jury proceedings.

An important consideration justifying the recognition of the prerogative in the trial court to allow defense counsel to inspect the material portions of the transcript for

3. 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323.

4. Mo., 327 S.W.2d 278. Majority opinion by Hyde, J., Eager, J. dissented opinion denying rehearing 327 S.W.2d 289.

impeachment purposes when he thinks the interests of justice demand it is the fact that one charged by the usual method of filing a complaint is entitled to a preliminary hearing which affords him an opportunity to know what the witnesses against him testify to; whereas one indicted by a Grand Jury does not have that advantage.

It is argued that to approve the order in question and to recognize such discretion in the trial court is fraught with the danger that the court will always have to make such a transcript available to the defense before trial upon request; or in the alternative, it will have the arbitrary power to refuse such a transcript. The answer to such contention, insofar as this case is concerned, is that the court has ordered the transcript made available and there is no question of arbitrary refusal. More fundamental upon this point is the fact that the trial judge is close to the litigation and aware of the exigencies thereof. It is to be assumed that he will exercise sound discretion as to whether the information should be revealed to the defense based upon its importance for that purpose compared to the possible harm it might do to the Grand Jury's function, or to others, or to the public interest. It is elementary that wherever discretion exists in the trial court, this Court indulges considerable latitude to the determination made and will

not interfere with it in the absence of a showing of clear abuse of such discretion.[5]

Further supporting the conclusion we reach is the sound and well-recognized principle that the writ of prohibition, being an extraordinary one which reaches out and arrests the proceedings of another tribunal, is used with great restraint. It normally will not be invoked to interfere with the proceedings of a court unless it is acting without jurisdiction, or clearly outside of its authority, or where some irreparable harm will result.[6]

We are of the opinion, however, that the portion of the order charging the District Attorney with the responsibility of "screening" the transcript is not well advised. It indeed could be dangerous in the hands of anyone other than a most conscientious and scrupulous prosecutor. Defense counsel offered to waive any defect in that regard, which is a compliment to the District Attorney. Nevertheless, such order may in the future be regarded as a precedent. The screening is a judicial function and not one to be performed by an adversary. Although the duty may prove somewhat burdensome to the trial judge, and is not without difficulty, we believe that it should be done by the Court itself.

5. Anderson v. Baker, 5 Utah 2d 33, 296 P.2d 283.

6. Ibid.

The alternative writ is recalled and the Court is permitted to proceed as it deems advisable in the premises.

WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. I think the decision here is an unprecedented, unsupported and unwarranted saber thrust into the very heart of our Grand Jury system. It amounts to judicial legislation. Aside from its pedantry, it nonetheless bids adieu to that system. What is worse, it desecrates the sacred pledge of secrecy accorded those appearing before the Grand Jury to date. At least it could have been prospective in operation rather than retroactive. The erstwhile fountains of information fed by a pledge of nondisclosure henceforth will be dry as bones. If a Grand Jury ever sits again after this decision, it will twiddle its thumbs, perhaps witnessless.

As frequently occurs, do-good statutes and decisions boomerangishly maim those they intend to help. From here on out, if there be a Grand Jury session, which I doubt, any prosecutor worth his salt will advise that body to indict no one at all, giving assurance that prosecution will be conducted by filing of informations after the Grand Jury has gone home. Then the accused will have no access *at any time* to *any* testimony given before the Grand Jury.[1] It takes no imagination whatever to observe that an accused *will not even have the benefit of a transcript of testimony after he goes to trial,*—a privilege at least granted to him in State v. Harries.[2]

The main opinion is somewhat of the fluffy type. It fluffs off not only history and tradition, but also wholesome reasons and the statutes, minimizing the important and magnifying minutiae. All is well, it says, because "truth has nothing to fear from light."[3] Truth may have nothing to fear from light, but to fracture the traditional secrecy of the Grand Jury system prevents that truth from ever basking in such light.

How would the main opinion treat this aphorism in the next case,—where an accused demands to see the confidential records of the District Attorney and the Trial Judge orders them produced? There is as much or more reason why the accused should have such information to prepare for trial as there is here. If we are to be consistent, when such case arrives, we will have to legislate judicially a little more, or a little more judiciously, or else evade the issue altogether.

1. Sec. 77–19–9, U.C.A.1953, provides for preparation of a transcript only in those cases where an indictment is returned.
2. 118 Utah 260, 221 P.2d 605.

3. Quotation from Ex parte Welborn, 1911, 237 Mo. 297, at page 305, 141 S.W. 31, at page 34.

The statute cited in the main opinion, Sec. 77–19–10, U.C.A.1953, calling for secrecy, most clearly militates against the novel construction placed on it in this case. There are only two reasons set forth therein justifying any excursion into the Grand Jury domain. One allows disclosure of testimony of a witness before the Grand Jury, *if he, himself has been charged with perjury*. Not the case here. The other calls for an order of disclosure "for the purpose of ascertaining whether it is consistent with that given by the witness *before the court*." Not the case here. There is no possible way such language can be made malleable enough to mean anything else than that such disclosure must be at some time *after trial has begun* and *after a witness has been sworn and has testified*— as in the Harries case.

In this connection it seems unfortunate and somewhat unfair for the main opinion to create the impression that the Harries case supports this decision, by lifting from context the statement that a "defendant is not entitled to inspect a copy of the transcript before trial as a matter of right," —thus hinting that if he requests the transcript he can get it. The main opinion conveniently omits the real holding in that case wherein it was said:

"It has always been the policy of the law that the investigations and deliberations of a Grand Jury should be behind closed doors and that the results of its labors should not be disclosed."

And again:

"The quoted sections [4] *establish* that the legislature only intended to lessen the tension of the common law rules to the extent of making a transcript available to the defense *for impeachment purposes*."

It goes without saying that *there can be no impeachment unless there is a trial at which a witness has been sworn and has testified*.

The court further made it crystal clear that, even though there might be a rare situation where disclosure could be had before trial, a strong showing of necessity would have to be made, not simply a motion made based on the assertion that it was necessary to prepare for trial, (the identical motion made in the Harries case) when it said:

"If use of the transcript is limited to impeachment purposes, then defendant could not make a claim of contradictory stories until a witness who had appeared before the Grand Jury *had testified in the trial of the cause. Until that time there could be no showing made that there were variances in the testimony of any witness on the two occasions.* In the present action there was nothing disclosed to the trial judge

4. The identical sections relied on by the main opinion here.

prior to the time the trial commenced which would require him to exercise his discretion in favor of the defendant. When the witness Lack *completed his direct examination and cross-examination suggested uncertainty in his testimony, the transcript was made available to the defendant.*" 5

Many witnesses appearing before grand juries never may be called to testify at trials after indictments are returned, yet under this decision and its amplifications, what those witnesses may have said could be carried around in the heads of some lawyers who might not treat such information as scrupulously as we are sure it will be treated here. Many times one who has been indicted will plead guilty to a lesser offense on the eve of a trial, obviating the necessity for any testimony at all. Yet, under this decision, he and his counsel will have acquired the testimony of a witness given in secret under a pledge of nondisclosure.

*I challenge anyone to point out any difference between this case and the Harries case.* The motions to obtain a transcript were identical, yet the defendant was not permitted to have a transcript of testimony in that case *until the witness before the Grand Jury was called and testified at the trial.*

I challenge anyone to demonstrate where the defendant will be denied any fundamental right if he is permitted to obtain a transcript of the testimony of a witness at the trial, but not before. They didn't seem to have any trouble with the procedure in the Harries case which permitted disclosure only at the trial and after the witness whose testimony was sought to be impeached, had testified. The only reason given in the main opinion for disclosure of the secret testimony before trial is that to deny it would make it "cumbersome" and "difficult" to compel counsel to wait until the witnesses had testified before giving him a transcript of the testimony. Such a reason did not seem to impress the trial judge in the Harries case. Such a reason, in my humble opinion, is nothing short of jurisprudential naivete, and no such reason ever has been ventured by this court in justification of an incursion into the Grand Jury room.

The main opinion concedes that Grand Jury proceedings historically have been secret. It assigns five reasons justifying that secrecy, only to desert them. It reasons that after an indictment is returned and the defendant arrested, the reason for secrecy disappears, except as to two of the reasons given. One of those is that secrecy will avoid giving defendants an opportunity

5. In this case "there was nothing disclosed to the trial judge prior to the time the trial commenced which would require him to exercise his discretion in favor of the defendant."

to fabricate perjured defenses. This, says the opinion ever so lightly, has very little or no validity. No other authority on the subject shares such nonchalance. To look askance at such possibility or probability is to ignore reality and to discount completely the human equation.

The tribute paid to human rights and those of the accused by the main opinion have no place in this case. The main opinion concedes that the defendant has no absolute right to read the testimony, and I am of the opinion that someone should say a word or two for the community and the citizens who do not get into trouble and who are entitled to be protected against predatory practices.

The majority opinion leaves to the discretion of the trial court in each case, the matter of whether a transcript of testimony of Grand Jury witnesses will be furnished to the defendant before trial. Such a rule leads to the most ridiculous of results, (as ridiculous as the Harries case denying disclosure, while this case grants it on identical motions) to such extent that where two persons are charged with the same crime, one may be allowed to take a look-see into the Jury Room by one judge, while the other will be denied the same privilege by another but less solicitous judge. It has always been my impression that all accused persons should be accorded the same treatment, but it is perfectly obvious the variety of justices or injustices engenderable from the rule sired by the main opinion.

From time immemorial the proceedings of Grand Juries have been shielded in secrecy, to the end that grand jurors themselves have been sworn to it,[6] and many good wholesome reasons have been assigned therefor,[7] including those adverted to in the main opinion. The system seems to have worked all right. Since Grand Juries have been impanelled here, such secrecy has remained inviolate save for the exception fashioned in the Harries case. To date none has championed the extent to which this case goes, and there is no statutory or decisional law to support it.

For the main opinion to cite Pittsburgh Plate Glass Co. v. United States, and State ex rel. Clagett v. James in an effort to support its conclusion, indulges in what this writer considers an unfair and inaccurate reporting of those decisions. In the Glass case the court decided the defendant could not obtain a transcript of testimony before the grand jury. Even so, the case was based specifically on a *special statute* that permitted a "juror, attorney, interpreter

6. Goodman v. United States, 9 Cir., 108 F.2d 516, 127 A.L.R. 265.

7. Meyers v. Second Judicial District Court, 1945, 108 Utah 32, 156 P.2d 711; United States v. Kirkwood, 5 Utah 123, 13 P. 234; Goodman v. United States, supra.

or stenographer" to disclose matters occurring before the grand jury, "only when so directed by the court *preliminarily* to or in connection with a judicial proceeding." [8] We have no counterpart in our statutes, and I invite anyone to point out any Utah legislation that specifically, or even by employment of the wildest kind of inference, comes close to the legislation permitting the disclosure in the Glass case,—which disclosure was denied, even in spite of the legislation permitting it.

In the Clagett case, the defendant had been indicted himself by the Grand Jury *for perjury*. Had the defendant in our instant case been indicted *for perjury* as was the case there, there is sanction *in the Utah statutes themselves* for disclosure in such case,—a statute actually quoted in the main opinion,—when, under Sec. 77–19–10, U.C.A.1953, it provides that disclosure may be made 1) "for the purpose of ascertaining whether it is consistent with that given by the witness *before the court,*[9] or 2) to disclose the testimony given before the grand jury by any person *upon a charge against such person for perjury*, in giving his testimony, or upon upon his trial therefor." It is perfectly obvious the Clagett case is no authority for the case here.

Furthermore, that case hails from Missouri, where a statute specifically authorizes the defendant to take depositions of the witnesses before a Grand Jury or elsewhere.[10]

This decision no doubt will discourage appearances before Grand Juries. This decision will result in destroying a defendant's opportunity to obtain a transcript of a grand jury witness' testimony at the trial, since the Grand Jury, protecting its erstwhile status as a secret agency, and in protecting those appearing before it, simply will gather the information but will fail of indictment, leaving the course of procedure to be handled by way of information. This decision will impress those who already have appeared before the Grand Jury, as being the subject of sales down the river.

The writ should be made permanent.

CALLISTER, Justice (dissenting).

I respectfully dissent. In my view the main opinion disrobes the Grand Jury of its historic cloak of secrecy [1] and, in so doing, condemns it to ineffectiveness and eventual oblivion. All this without benefit of statute or precedent.

It is my observation that courts of late have a tendency to overemphasize the

---

8. Fed.Rules of Crim.Proc. Rule 6(e) 18 U.S.C.A.
9. Obviously for impeachment purposes after a witness has testified at a trial.
10. Missouri Revised Statutes, 1949, Sec. 545.400, V.A.M.S.

1. The Section of Judicial Administration of the American Bar Association has prepared Federal and State Handbooks for Grand Juries in which the necessity for secrecy is emphasized. See Vol. 45, American Bar Association Journal, p. 800.

rights of an individual accused of a crime without due regard to the rights of the public. It is becoming increasingly more difficult to effectively administer our criminal laws and justly expose and punish those who have violated these laws.

In the instant case defense counsel requested access to the transcript of the Grand Jury in order to aid him in preparing for trial. My research indicates that the courts throughout the nation have consistently denied access to grand jury proceedings prior to trial to help the defendant prepare his case.[2]

Judge Learned Hand, in his inimitable style, had this to say:[3]

"Finally, the defendants, recognizing that it is difficult to make a case for quashal by the scraps of evidence accessible, move for inspection of the grand jury's minutes. I am no more disposed to grant it than I was in 1909. United States v. Violon, C.C., 173 F. 501. It is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will. Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. *Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see.* No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price. Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. *What we need to fear is the archaic formalism and the watery sentiment*

2. State v. Harries, 118 Utah 260, 221 P. 2d 605; In re Martin, 170 Misc. 919, 11 N.Y.S.2d 607; People v. McCarthy, 188 Misc. 132, 67 N.Y.S.2d 560; People v. McOmber, 206 Misc. 465, 133 N.Y.S.2d 407; State v. McDonald, 342 Mo. 998, 119 S.W.2d 286; Conway v. Quinn, Mo. App., 168 S.W.2d 445; Mo.R.S.A. § 13359; State v. Hayes, 127 Conn. 543, 18 A.2d 895; State v. Krause, 260 Wis. 313, 50 N.W.2d 439; Havenor v. State, 125 Wis. 444, 104 N.W. 116; Steensland v. Hoppmann, 213 Wis. 593, 252 N.W. 146; United States v. Rose, D.C., 113 F. Supp. 775; State v. Selby, Ohio Com. Pl., 126 N.E.2d 606, 607; 23 C.J.S. Criminal Law § 956; 14 Am.Jur.Criminal § 210, cf. United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077; Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323. The foregoing citations are far from exhaustive.

3. United States v. Garsson, D.C.S.D.N.Y. 1923, 291 F. 646, 649.

364

*that obstructs, delays, and defeats the prosecution of crime."* (Emphasis added.)

According to the main opinion, reasons for secrecy of grand jury proceedings are of "little or no validity," or else disappear after the indictment and arrest of the accused. This argument does not persuade me and evidently did not impress Judge Hand. On this precise point the Supreme Court of New Jersey, Parker, J., had this to say:[4]

> "It is suggested that the 'purpose of secrecy has been effected,' and consequently the obligation has ceased from that time. I cannot agree that such purpose is fully effected when indictment is found. If at that juncture the grand jury proceedings are to be thrown wide open, the possible damage to the interests of the public by way of aiding the accused would be incalculable."

The majority opinion cites State v. Harries[5] as authority for its position. I read and cite it for just the opposite result. In that case, as in the instant case, defense counsel prior to trial requested access to the transcript of testimony before the Grand Jury for possible use for impeachment purposes (i. e., to aid in the preparation of the trial). This request was denied by the trial judge, but later, *after the witness had testified,* allowed defense counsel use of the transcript for impeachment purposes. This court upheld the trial judge and, in its main opinion, made the following statements:

> "* * * It has always been the policy of the law that the investigations and deliberations of a Grand Jury should be behind closed doors and that the results of its labors should not be disclosed. * * *

> "The common law rules concerning secrecy were strict and inflexible but over the years a policy of liberation developed. By enacting Chapter 13, Laws of Utah 1947 (now 77–19–9 and 10, U.C.A.1953), supra, our legislature evidenced an intent to release some of the tightly bound rules of secrecy. However, we cannot go further than permitted by the provisions of this chapter for the reason that *the authority to relax is with the legislature and not the courts.* The quoted sections establish that the legislature *only* intended to lessen the tension of the common law rules to extent of making a transcript available to the defense *for impeachment purposes.* * * * *Furthermore, the legislature could have very easily prescribed that a copy of the transcript be furnished the defendant, had it intended such to be the case.*

---

4. State v. Borg, 8 N.J.Misc. 349, 150 A. 189, 191.

5. See footnote 2, supra.

\* \* \* If use of the transcript is limited to impeachment purposes, then defendant could not make a claim of contradictory stories *until a witness who had appeared before the Grand Jury had testified in the trial of the cause.* Until that time there could be no showing made that there were variances in the testimony of any witness on the two occasions. In the present action there was nothing disclosed to the trial judge prior to the time the trial commenced which would require him to exercise his discretion in favor of the defendant. \* \* \*" (Emphasis added.)

In recognizing, and citing with approval, the Harries case the majority has created a situation of confusion. Without any standards or guideposts the trial judges may grant or deny access to transcripts of grand jury proceedings to a defendant without abusing their discretion—regardless of the particular circumstances. Every defendant who pleads not guilty to an indictment must prepare his case. If one defendant is entitled to the transcript prior to trial, then in all fairness all defendants should receive the same consideration. The majority, to be consistent, should have so ruled.

The dilemma is further compounded by the presumably accepted proposition that a person charged with crime by information (by far the most customary procedure in this state) rather than by indictment is not afforded the opportunity to preview the prosecution's evidence. To be consistent and fair, should not a defendant, charged by information, be entitled to access of the files of the prosecutor and law enforcement agencies—prior to trial?

In an effort to retain some semblance of secrecy, the majority opinion provides for a "screening" of the transcript by the trial judge (instead of the district attorney).. This would necessitate the exercise of delicate, if not impossible, discretion by the trial judge. Just what portions of the Grand Jury proceedings should be made available to the defendant? Would not the defendant or his counsel, of necessity, have to read the entire transcript to determine whether or not the trial judge had arbitrarily withheld portions that were essential and material? When, upon appeal to this court by the convicted defendant (the state would not enjoy the same privilege), would we not have to read the entire transcript to determine if it had been properly "screened"? Of course, in appealing to this court the testimony of witnesses before the grand jury would be discussed in the briefs and oral arguments of counsel and in this court's reported decision—all available to the public. Goodbye secrecy!

Is not this "screening" more "cumbersome and difficult" than the procedure followed by the trial judge in the Harries case?

366

The Harries case interprets our statutes to mean that a defendant upon good showing, may, at the discretion of the trial court use the transcript of a witness' testimony before the Grand Jury for impeachment purposes after the witness has testified at the trial. I also construe our statutes to mean that the transcript may be made available at any time and to any person (our statutes use the term "person" and do not specifically refer to defendant) if a strong and positive showing should be made why the seal of secrecy should be broken. This should never be done except in extreme instances to prevent clear injustice or an abuse of judicial processes. This case does not qualify and therefore the alternative writ should be made permanent.