359 P.2d 12

:STATE of Utah, Plaintiff and Respondent,

v.

Theodore I. GEURTS, Defendant and
Appellant.

No. 9281.

Supreme Court of Utah.

Feb. 3, 1961.

Henriod, J., dissented.

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Vernon B. Romney, Asst. Atty. Gen., Jay E. Banks, Dist. Atty., Quentin L. R. Alston, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant, Theodore I. Geurts, appeals from a jury verdict finding him guilty of malfeasance in office and a judgment entered removing him from his office as a commissioner of Salt Lake City, under our statute providing for removal of public officials on that ground.[1]

He had been elected to a four-year term in that office in the regular city election in 1957, and took office in January of 1958. In July, 1959, the Salt Lake County Grand Jury returned an indictment charging him with the crime of neglect and misconduct in office in connection with six separate transactions. In that criminal proceeding,

1. 77–7–1, U.C.A.1953 provides "All officers not liable to impeachment shall be subject to removal for high crimes, misdemeanors or malfeasance in office as in this chapter provided."

four of the six counts were dismissed on defendant's motion, and that proceeding remained in abeyance. Three months later the district attorney instituted this action to remove the defendant from office under Chapter 7, Title 77, U.C.A.1953, based on three counts of the Grand Jury indictment.

Count 1 charged that in May, 1959, J. W. Reed, a real estate agent, gave the defendant $119 purportedly as a belated campaign contribution, but in reality it was a 10% cut in a commission collected by Mr. Reed on a sale of real estate to the City.

Count 2 charged that the defendant had received for his own use and that of his son-in-law some trees, shrubs and top-soil from the city cemetery, and that these were delivered to and placed in the yards of their homes by city employees using city equipment.

Count 3 charged that as a means of granting favors to certain city employees the defendant caused them to be paid overtime for time not actually worked.

At the close of the State's case the court granted defendant's motion to dismiss Count 1. The jury returned a verdict of guilty on Count 2 and not guilty on Count 3.

Seeking a reversal, or a new trial, the defendant makes a number of attacks against the judgment, the principal ones are:

A. That the statute is unconstitutional.

B. That the district attorney had no authority to institute the action.

C. That a mistrial should have been granted when count one was dismissed.

D. That the court erred in denying defendant's request to take depositions.

A. Defendant contends that the phrasing of the statute authorizing removal for "malfeasance in office" is so indefinite that it should be declared unconstitutional for vagueness, citing numerous cases where criminal statutes have been declared invalid for that reason.[2] It is not to be doubted that a penal statute must be sufficiently definite to provide a guide for those governed by it. It is also true that the basic meaning of the term "malfeasance" is evil doing. In that sense it is admittedly somewhat general and difficult of precise definition as is acknowledged in criminal law texts and other legal publications referred to by the defendant.[3] But it is significant that despite the fact that malfeasance was recognized at common law, and has been widely used in constitutions and statutes, no authority has been cited or found which holds it to be so vague as to render

---

**2.** Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562, on remand 118 Utah 537, 223 P.2d 193; United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516; City of Price v. Jaynes, 113 Utah 89, 191 P.2d 606.

**3.** 43 Am.Jur., p. 39; Perkins, Criminal Law, p. 412.

a statute unconstitutional. On the contrary, by usage the phrase "malfeasance in office" has acquired a commonly understood meaning: it requires an intentional act or omission relating to the duties of a public office, which amounts to a crime, or which involves a substantial breach of the trust imposed upon the official by the nature of his office, and which conduct is of such a character as to offend against the commonly accepted standards of honesty and morality.

The above meaning of the term is so well known that it was used in our state constitution, Art. VI, Secs. 19 and 21, which provide for the removal of public officials for "malfeasance in office"; and the statute under attack simply implements those provisions. It is our opinion that the phrase is sufficiently definite to enable people of ordinary intelligence and understanding to know what conduct is required or prohibited and that it is, therefore, not so vague or uncertain as to be invalid.[4] Our conclusion is reinforced by the well-known precept that any doubts must be resolved in favor of constitutionality.[5]

B. The defendant makes what we regard as a somewhat strained argument that this action could not properly be insti-

tuted by the district attorney without a prior request having been made to the attorney general. He bases this on the provisions of Rule 65B(b) and (c) U.R.C.P.: that where a person usurps a public office or does an act which works a forfeiture thereof the attorney general *may* commence an action and that only if he refuses to do so after notice, others may bring such a proceeding. Implementing this he points to Rule 1 which states that the Rules of Civil Procedure shall " * * * govern the procedure * * * in all special statutory proceedings, except as stated in Rule 81"; and the latter provides that such Rules shall apply to all special statutory proceedings, except insofar as such rules are by their nature "clearly inapplicable." The answer to the above argument is that Section 2 of Chapter 7, under which this action is brought, expressly authorizes the district attorney to bring it. This specific provision makes the general rules above referred to "clearly inapplicable" to this proceeding and takes precedence over them.[6]

C. The essence of the defendant's argument that he was entitled to a mistrial at the time the court dismissed count 1 is that, conceding the acts charged in the

---

4. See State v. Packard, 122 Utah 369, 250 P.2d 561; Henrie v. Rocky Mountain Packing Corporation, 113 Utah 444, 202 P.2d 727; and the cases cited in footnote 2, supra.

5. State Water Pollution Control Board v. Salt Lake City, 6 Utah 2d 247, 311 P.2d 370; Newcomb v. Ogden City, 121 Utah 503, 243 P.2d 941.

6. University of Utah v. Richards, 20 Utah 457, 59 P. 96; Bateman v. Board of Examiners, 7 Utah 2d 221, 322 P.2d 381.

other two counts would justify finding him guilty of malfeasance in office, they were trivial and that except for the evidence on the real estate transaction, which tended to impugn his honesty, the jury would not have found him guilty on count 2.

This argument is untenable. In the nature of some types of criminal proceedings it is oftimes necessary to charge violations in separate counts. If a dismissal on one count would entitle a defendant to a mistrial on the others, insuperable obstacles to the conduct of such proceedings would exist. The prosecution could never proceed upon multiple counts unless it was absolutely certain of convincing the trial court that the case could go to the jury on all of them. Otherwise, if the defendant obtained a dismissal on any count, he would be entitled to a mistrial, and the whole proceeding would have been in vain. The argument might be carried further: if a jury found a defendant guilty on some counts and not guilty on others, he could as plausibly argue that they should not have heard the evidence pertaining to the counts on which he was found not guilty, and that he should have a new trial. Court proceedings of necessity have to be more practical than that.

The real estate transaction was entirely separate and unrelated to the matters charged in the other two counts. We see nothing about the charge or the evidence relating to it to confuse the jury or to make it difficult to consider separately the evidence in regard thereto as bearing only on count one. The jury was properly so instructed and it is to be assumed that they gave separate consideration to that count in accordance with the instructions given.

Losing counsel in an overzealous effort to find some error upon which to pull the chestnuts of a lost cause out of the fire often seize upon any figment as having prejudiced the jury or dissuaded it from the performance of its duty. If this were as easily accomplished and juries were as fragile as such counsel are wont to contend, the system would have expired of its own folly long ago. The fact that it has worked so satisfactorily and survived so long as a means of determining issues of fact and settling controversies is the best testament that such is not the case; and that jurors are, in the main, practical, down-to-earth people motivated by a sincere desire to honestly and conscientiously perform their function and to do justice. The soundness of the jury system rests on this assumption and it must be so assumed in each case until something appears to persuade the court to the contrary. No such circumstance is shown here.

It was the prerogative and the duty of the trial judge to grant a mistrial if it appeared that something had occurred that prevented a fair trial, and the ends of justice so required; and because of his ad-

vantaged position he is allowed considerable discretion with respect thereto. There is no indication here that he abused his discretion in refusing to grant the motion.

D. The most serious attack upon the judgment is that the court erred in rejecting defendant's request to take depositions of the witnesses. We willingly concede that it is difficult to understand why the district attorney opposed the taking of depositions. He may have misconceived his duty. Notwithstanding the fact that under our adversary system it is essential that he represent and safeguard the interests of the State, it is neither necessary nor desirable that a prosecutor conduct either a persecution or an inquisition. His responsibility is to assist in an inquiry into the facts to ascertain the truth to the end that justice be done. While we do not deem it to be grounds for reversal here, for reasons explained below, we are not favorably impressed with the failure to permit the taking of depositions of the witnesses.

This proceeding can properly be regarded as quasi-criminal. Section 11 states that "the trial must be by jury, and shall be conducted in all respects in the same manner as the trial  *  *  *  for a felony." From a survey of the chapter (77–7 U.C.A.1953) it appears that the legislature thought the interests of the public in combating corruption in public office require an expeditious

procedure for the removal of public officers who betray their trusts. Quite likely this is the reason why no provision is made therein for a preliminary hearing as is done for felonies in the criminal code.

The need for reasonable expedition and the elimination of obstructing or delaying tactics cannot be ignored. But due to the serious consequences to a defendant so charged, it is also important to maintain such protections for the accused as can be done consistent with the purpose of the statute. Our Rules of Civil Procedure provide for the taking of depositions.[7] As noted above, Rule 81 provides that they: "shall apply to all special statutory proceedings, except insofar as such rules are by their nature clearly inapplicable." This proceeding can be nothing other than a special statutory proceeding; and we can see no reason why such rules are "clearly inapplicable" thereto. Therefore, we conclude that under usual circumstances the taking of depositions should be permitted. Accordingly we must now consider whether the denial of that right was prejudicial to the defendant so the case should be sent back for a new trial.

■■ The declared policy of our law is not to reverse for irregularity or error unless it is of such consequence that it may fairly be supposed that it had a substantial effect upon the trial in that there is a rea-

---

**7.** Rule 26, U.R.C.P.

sonable likelihood that a different result would have obtained, absent such error.[8] In considering this assignment of error it is important to keep in mind that the defendant does not claim that he would have obtained any additional information from the depositions. In fact, as explained below, he hardly could do so. Nor does he argue their value for impeachment or cross-examination. The argument he makes is that had such depositions been taken, he could have obtained a dismissal of count 1 prior to trial, and thus have kept any evidence concerning the real estate commission transaction from being brought before the jury. We have discussed this problem in connection with C above relating to the contention that a mistrial should have been granted at the time count 1 was dismissed, and concluded that this evidence was of such a nature that the jury could disregard it and decide the remaining issues on the other evidence presented. The above discussion applies with equal force here. For the reasons there stated we do not regard this contention as being a valid reason for granting a new trial.

On the question of the defendant's obtaining additional information, this is to be said: defendant's counsel assiduously pursued the available avenues and appears to have procured substantially all discoverable information. After the defendant was indicted, at some effort and difficulty, including a proceeding before this court, he obtained an order that he be allowed to examine the testimony of the witnesses given before the grand jury.[9] He also served interrogatories upon the district attorney, the answers to which gave complete details of the misconduct charged in each count and included the names of the witnesses who would testify thereon. Upon his further request, supplemental information was also furnished. It thus does not appear that he lacked information for the preparation of this case. This is undoubtedly the reason that he makes no such contention. It was in the light of the fact that the defendant had thus been furnished full information that the trial court rejected his request to take depositions of the witnesses. Under those circumstances we do not think that this order resulted in any prejudice to the defendant that would require the case to be reversed. Nor do we see how a new trial granted on this ground would be more likely to accord with substantial justice than the one already concluded.

■ Two additional assignments of error are worthy of attention. The first of these is that the instruction to the jury relating to malfeasance in office was inade-

---

8. See Rule 61, U.R.C.P.; also see Ivie v. Richardson, 9 Utah 2d 5, 13, 336 P.2d 781 and Startin v. Madsen, 120 Utah 631, 237 P.2d 834.

9. State v. Faux, 9 Utah 2d 350, 345 P.2d 186.

quate. What we have said about the meaning of the term under A above in discussing the constitutionality of the statute is also applicable to this assignment of error. This also can be said: adroit counsel may dissect an instruction, and by attempting to hang the whole case on separate parts thereof, make a plausible argument that error was committed. But when the instructions are considered as a whole, and in the light of the evidence and the particular charges lodged against the defendant, as they should be, there is no doubt that the jury was clearly and accurately advised of specific charges which would constitute malfeasance in office and that they had to be proved beyond a reasonable doubt before the defendant could be found guilty.

■ The final point we give attention to is the contention that the court erred in the selection of the jury. We have considered the various irregularities complained of. Although it is claimed that certain of the jurors had knowledge of the case because of its wide-spread publicity and had formed opinions thereon, it does not affirmatively appear that any of the jurors were so affected by such information as to disqualify them. Upon questioning, all who were chosen satisfied the judge that they could and would fairly and impartially try the case upon the evidence presented. Accordingly the trial court did not abuse the discretion reposed in him in permitting the questioned jurors to remain on the panel.

The judgment is affirmed. No costs awarded.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, since I believe it was prejudicial to deny the accused the right or privilege either of taking depositions of witnesses or of having a preliminary hearing. The right to take depositions is a statutory procedural amenity accorded litigants in civil actions. The right to a preliminary examination is a statutory procedural amenity accorded even a felon,—a role to which Mr. Geurts has not been attributed. Yet he was allowed neither privilege. All this apparently on a theory that *depositions* were unavailable to him because the proceedings were *quasi-criminal,* and a *preliminary hearing* was unavailable because the matter was *quasi-civil.* Such queasy quasi reasoning seems hardly befitting our historical and traditional insistence that an accused be possessed of reasonably adequate defensive tools, including representation by counsel, so as properly to present his side in the fairest possible manner. Such reasoning and procedure hardly attune themselves to the tribute paid the rights of an accused at pages 354–355 of 9 Utah 2d, and at pages 188–189

of 345 P.2d, of our decision in State v. Faux, District Judges of the Third District.[1]

The main opinion points out correctly that the accused had access to information obtained by the Grand Jury,[2] and was furnished answers by the district attorney to interrogatories put him. But it loses sight of the fact that such information was not the product of sworn testimony elicited by questions put by counsel of the accused's choice. It seems to lose sight also, of the fact that preliminary hearings and the right to take depositions frequently are the sharpest weapons available to counsel in piercing subsequent testimony by confrontation with prior inconsistent testimony. Such an opportunity, denial of which appellant assigned as error, quite frequently results in impeachment that may make the difference between guilt and innocence in the minds of the veniremen.

Who knows, and who are we to say whether the privilege of pursuing the one course or the other would have been the difference between guilt or innocence? If perhaps it *had* been permitted, and *had* made such a difference, a man's whole future and that of his family may have been reflected from a mirror evidencing a quite different complexion. Assuming such opposite result may have been reached had

Mr. Geurts been permitted either procedure, the words of Iago to Othello would be comfortless here: "Who steals my purse steals trash; * * * But he that filches from me my good name robs me of that which * * * makes me poor indeed."

---

1. Wherein this writer dissented, not because of any philosophy of interdiction of the rights of an accused, but because of the invasion of the historical function of Grand Juries.

2. State v. Faux, District Judges of the Third District, 1959, 9 Utah 2d 350, 345 P.2d 186.